UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Barteca Holdings LLC<br>Barteca Intermediate Holdings LLC<br><br>Plaintiffs,<br><br>v.<br><br>tacobarn Newtown LLC<br>tacobarn Greenwich LLC<br><br>Defendants. | **COMPLAINT FOR TRADEMARK<br>INFRINGEMENT, TRADE DRESS<br>INFRINGEMENT, FALSE DESIGNATION<br>OF ORIGIN, UNFAIR COMPETITION,<br>COMMON LAW INFRINGEMENT,<br>COMMON LAW UNFAIR<br>COMPETITION, AND DECLARATORY<br>JUDGMENT**<br><br>Civil Action No.<br><br>JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT**

Plaintiff Barteca Holdings, LLC and Plaintiff Barteca Intermediate Holdings, LLC for its

Complaint against Defendant tacobarn Newtown LLC and Defendant tacobarn Greenwich LLC,

allege as follows:

**Statement of the Case**

1.       This is an action for false designation of origin, unfair competition, trademark

infringement, and trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. §

1125(a), and Section 32 of the Lanham Act, 15 U.S.C. § 1114, for common law trademark

infringement and unfair competition under Connecticut common law, for unfair and deceptive

trade practices under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et

seq, and for declaratory relief under 28 U.S.C. § 2201.

2.       Founded in 2010, bartaco (stylized as **bartaco**) is an American restaurant brand

known for its upscale, street-style approach to tacos and casual dining. bartaco operates thirty-

one company-owned locations across thirteen states, primarily along the East Coast, and has

built a loyal customer base through a distinctive combination of food, service mechanics, and in-restaurant experience. bartaco's menu emphasizes small, individually portioned tacos and Latin-inspired sides—such as Baja-style fish, wild boar, sweet plantains, and house-made guacamole—designed to be shared and enjoyed in an informal, grazing format rather than traditional coursed dining. Central to the bartaco experience is its signature ordering system, in which guests mark paper menu slips incrementally, submit orders in rounds by signaling staff with a table card, and receive dishes as they are prepared. This integrated concept—combining menu design, ordering mechanics, and presentation—has been implemented consistently across bartaco's locations and is widely recognized by consumers as uniquely associated with the bartaco brand.

3.       bartaco owns federal trademark registrations for the BARTACO mark covering restaurant and bar services, reflecting its longstanding and exclusive use of the name nationwide. These registrations have obtained incontestable status. Beyond the registered mark, bartaco has also developed a protectable trade dress reflected in the distinctive look, feel, and service experience of its restaurants. That trade dress is the product of intentional design and operational choices—guided by centralized brand standards and implemented consistently across bartaco's locations—not happenstance décor or generic industry practices. Through years of consistent and substantially exclusive use, consumers encountering these elements have come to recognize them as identifying bartaco as the source of the dining experience.

4.       Defendant tacobarn is owned and controlled by David Boyajian, a former senior executive of bartaco who played a leadership role in bartaco's early growth and expansion and was intimately familiar with bartaco's brand, operations, and customer experience. After leaving bartaco, Boyajian opened a directly competing restaurant concept using the name **"tacobarn"**—a mark composed of the same two words as **bartaco**, merely reversed—and offering identical

2

restaurant and bar services. This was not a coincidence. The adoption of a near-identical name for identical services by a former insider strongly supports an inference that consumer association with bartaco was anticipated and intended.

| bartaco | tacobarn |
|---|---|
| **Registered Mark** | **Infringing Mark** |

5.      Defendants' conduct creates a clear likelihood of consumer confusion. The marks bartaco and tacobarn share the same dominant words and convey a highly similar commercial impression, and Defendants use the tacobarn name in connection with identical restaurant and bar services directed to the same customers in the same geographic markets, while signaling further expansion through the formation of additional entities. Consumers do not parse word order or engage in side-by-side analysis; they rely on imperfect recollection.

6.      That likelihood of confusion is reinforced by Defendants' deliberate branding and design choices, including public admissions that tacobarn's branding and concept were inspired by bartaco, Defendants' use of the same architectural and interior design firm that designed numerous bartaco locations, and third-party commentary describing tacobarn as reminiscent of bartaco in ways extending beyond the similarity of the parties' names. Under these circumstances, consumers encountering the tacobarn name are likely to believe—incorrectly—that tacobarn is affiliated with, derived from, or sponsored by bartaco. This is precisely the type of confusion trademark law is designed to prevent.

7.      Defendants have also copied hallmark elements of bartaco's protectable trade dress, further compounding consumer confusion. bartaco's trade dress includes, among other

3

things, a distinctive tabletop and service presentation in which guests complete paper order slips incrementally; napkins and silverware are placed in a table-accessible canister positioned immediately adjacent to a multi-bottle salsa presentation; and food—particularly tacos—is served on uniform rectangular metal trays. These elements function together as a recurring and recognizable part of the bartaco dining experience. Defendants adopted these same features inside their restaurant, where consumers experience the brand holistically rather than through careful comparison. This copying—by former bartaco insiders—supports a strong inference of intent and materially increases the likelihood of confusion.

8.      Unless enjoined, Defendants' conduct will continue to cause irreparable harm to bartaco by eroding its brand identity, diluting the distinctiveness of its name and trade dress, and depriving bartaco of control over the goodwill it has spent years building. bartaco does not seek to prevent Defendants from operating a restaurant or competing fairly. What Defendants cannot do is operate a competing restaurant by appropriating a proprietary branding system—developed, refined, and owned by bartaco—and using it to trade on bartaco's reputation. Immediate injunctive relief is necessary to stop ongoing confusion, prevent further damage, and preserve the integrity of bartaco's brand.

9.      As used herein, "the bartaco Mark" refers individually and collectively to Plaintiff Barteca Intermediate Holdings, LLC's federally registered and common law BARTACO trademark, including all stylized, design, and word mark variations thereof, as well as any confusingly similar names, marks, or designations.

10.      "the bartaco Trade Dress" refers to the distinctive and non-functional overall look, feel, and commercial impression of bartaco's restaurants, including the combination and presentation of interior design elements, tabletop configurations, service mechanics, food

4

presentation, menu layouts, and related visual and experiential features that identify bartaco as the source of its restaurant services. The bartaco Trade Dress includes illustrative elements described herein but is not limited to any single feature or component. As used herein, "bartaco Intellectual Property" refers collectively to the bartaco Mark and the bartaco Trade Dress, together with all associated goodwill, rights, and interests arising from their use.

### Parties

11.    Plaintiff Barteca Intermediate Holdings, LLC is a limited liability corporation organized and incorporated under the laws of the State of Delaware and having a place of business at 599 West Putnam Avenue, Greenwich, Connecticut 06830.  Barteca Intermediate Holdings, LLC is responsible for owning and licensing the bartaco Intellectual Property. Barteca Intermediate Holdings, LLC exercises and maintains control over the nature and quality of all goods and services offered under the bartaco Intellectual Property.

12.    Plaintiff Barteca Holdings, LLC is a limited liability corporation organized and incorporated under the laws of the State of Delaware and having a place of business at 671 N Glebe Road, Suite 600, Arlington, VA 22203. Barteca Holdings, LLC is engaged in the development, operation, and expansion of bartaco restaurants, which are typically operated as subsidiary companies. The bartaco restaurants are licensed to use the bartaco Intellectual Property owned by Barteca Intermediate Holdings, LLC.

13.    Plaintiff Barteca Intermediate Holdings, LLC, is the sole owner of the bartaco intellectual property. Plaintiff Barteca Holdings, LLC is a non-exclusive licensee and does not claim ownership of the bartaco intellectual property. References to "Plaintiffs" or "bartaco" herein refer to Plaintiff Barteca Intermediate Holdings, LLC and Plaintiff Barteca Holdings, LLC acting jointly, except where ownership or registration rights are expressly at issue.

4899-8235-9696, v. 2

14.     On information and belief, Defendant tacobarn Newtown LLC is a limited liability company organized under the laws of the State of Connecticut and maintains a place of business at 2 Vona Way, Newtown, Connecticut 06470. tacobarn Newtown LLC operates a restaurant using the "tacobarn" name and the infringing trade dress described herein.

15.     On information and belief, Defendant tacobarn Greenwich LLC is a limited liability company organized under the laws of the State of Connecticut and maintains a place of business at 2 Vona Way, Newtown, Connecticut 06470. tacobarn Greenwich LLC was formed by the same principals as tacobarn Newtown LLC and was created in furtherance of Defendants' planned expansion of the tacobarn concept, including use of the infringing name and trade dress unless enjoined.

16.     At all relevant times, Defendants tacobarn Newtown LLC and tacobarn Greenwich LLC have acted in concert, under common ownership, management, and control, and each has knowingly participated in, benefited from, and directed the acts complained of herein. References to "Defendants" or "tacobarn" include both entities, their principals, agents, and all persons acting in active concert or participation with them.

**Jurisdiction and Venue**

17.     This Court has jurisdiction pursuant to 15 U.S.C. §§ 1119 and 1121, 28 U.S.C. § 1331, and 1338 over Plaintiffs' claims of federal trademark infringement, false designation of origin, unfair competition, and cancellation, which arise under the Lanham Act, 15 U.S.C. §§ 1051 et seq.

18.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 over Plaintiffs' state law claims.

19.     The Court's authority to award the requested equitable relief can be found at least in 15 U.S.C. § 1116(a), 28 U.S.C. § 1651(a), and this Court's inherent equitable power.

20.     Upon information and belief, this Court has jurisdiction over Defendants by virtue of their systematic and continuous contacts with Connecticut, and because Defendants (1) are Connecticut limited liability companies, (2) have registered a business address in this District, (3) have transacted and done business in this District, (4) have solicited consumers in this District, (5) have offered to sell or have sold goods or services in this District, (6) have committed tortious acts within this District, and (7) have websites that are accessible in this District.

21.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants reside in this District, a substantial part of the wrongful events giving rise to this action took place in this District, and Plaintiffs have suffered harm in this District.

**Common Facts**

**bartaco Restaurants**

22.     Plaintiffs operate the restaurant brand **bartaco**, stylized in all lowercase.

23.     bartaco is an American restaurant concept focused on upscale, street-style food and casual dining, with an emphasis on tacos, cocktails, and small plates inspired by Latin and coastal cuisines.

24.     bartaco opened its first location in Port Chester, New York and has since expanded through company-owned restaurants to approximately thirty-one locations across thirteen states, primarily along the East Coast of the United States. All bartaco locations are centrally owned and operated, and bartaco maintains strict quality control over its branding,

7

operations, and customer experience. There are three bartaco restaurants in Connecticut, including West Hartford, Westport, and Stamford, and in neighboring in Port Chester, New York

25.     A defining feature of the bartaco concept is its distinctive service model and dining format. Guests place orders using paper menu slips, submitting orders in rounds rather than through continuous table service. Orders are completed incrementally, and dishes are delivered as they are prepared, encouraging a casual, shared, grazing-style dining experience rather than traditional coursed meals. This ordering system is implemented consistently across bartaco locations and is integral to the bartaco customer experience.

26.     bartaco's menu emphasizes small, individually portioned tacos and Latin-inspired sides, including offerings such as Baja-style fish, wild boar, sweet plantains, and house-made guacamole. Food is presented in a standardized manner designed to reinforce bartaco's casual, approachable, yet curated brand identity.

27.     In addition to its menu and service mechanics, bartaco is known for a consistent in-restaurant presentation across locations, including interior design, tabletop configurations, menu layouts, and service aesthetics. These elements are governed by centralized brand and operations guidelines and are implemented uniformly across bartaco restaurants to ensure a consistent customer experience regardless of location.

28.     bartaco's brand has been recognized for successfully blending the casual appeal of street food with a full-service dining environment and a sophisticated atmosphere, distinguishing it from both traditional taco stands and fast-casual concepts. bartaco's concept draws inspiration from diverse coastal culinary traditions and emphasizes fresh, high-quality ingredients and vibrant flavors, with menu items such as Baja-style fish tacos, Latin-inspired sides, and specialty cocktails served in a relaxed but curated setting. bartaco's ability to elevate street-style fare

8

within a cohesive dining experience has been central to its market positioning and has resonated with a broad audience seeking both authenticity and value in casual dining. The brand's focus on design, ambiance, and experiential consistency has contributed to its consumer recognition and commercial success.

29.     Through more than a decade of continuous operation, bartaco has built substantial goodwill and consumer recognition. Customers encountering the bartaco name, restaurant environment, and service experience associate those elements with a single source and expect a consistent experience across bartaco locations.

**The bartaco Mark**

30.     Barteca Intermediate Holdings, LLC owns the bartaco Mark and licenses the bartaco Mark to bartaco restaurants.

31.     Since at least as early as 2010, Plaintiffs, either directly or through a predecessor-in-interest or licensees, have prominently and consistently used the bartaco Mark in interstate commerce to distinguish their products and services, emphasizing the high quality of their goods and services.

32.     Plaintiff Barteca Intermediate Holdings, LLC is the owner of the following United States trademark registrations for the bartaco Mark:

| Mark | Reg. No. | Goods and Services |
|---|---|---|
| bartaco | 4352284 | IC 043: Restaurant and bar services |
|  bartaco | 4352285 | IC 043: Restaurant and bar services |

4899-8235-9696, v. 2

33.     The registrations are valid and subsisting. Copies of the registrations are included in Exhibit A and are incorporated herein by reference.

34.     The registrations have achieved incontestable status pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

35.     Barteca Intermediate Holdings, LLC has extensive common law rights in its bartaco Mark through continuous and exclusive use, directly or through its predecessors-in-interest or licensees, in the U.S. in connection with its services since at least as early as 2010.

36.     Plaintiffs have promoted the goods and services under the bartaco Mark through traditional and non-traditional marketing and sales efforts at considerable expense.

37.     The bartaco Mark has become associated with the high-quality goods and services provided by Plaintiffs and has come to be associated in the minds of consumers as the sources of origin of the same.

38.     By virtue of the high-quality and the reputation achieved through such standards, Plaintiffs have established a strong market presence and significant niche in the restaurant and bar business.

39.     Plaintiffs' online presence further supports their strong brand recognition. Their Google Business profile for the Stamford location, alone, currently displays over 1,200 public reviews, reflecting a high degree of customer satisfaction and consumer trust.

40.     Plaintiffs maintain a robust social media presence across multiple platforms, including Instagram, Facebook, X (formerly Twitter), and TikTok, through numerous official brand accounts. By way of example, Plaintiffs' primary Instagram account, https://www.instagram.com/bartacolife/, has more than 150,000 followers.

4899-8235-9696, v. 2

41.     Due to such extensive and continuous use of the bartaco Mark, Plaintiffs have developed consumer recognition of and goodwill in the bartaco Mark.

42.     Plaintiffs have never abandoned their use of the bartaco Mark or the aforementioned services.

43.     Barteca Intermediate Holdings, LLC, is responsible for maintaining control over the quality of services offered under the bartaco Mark.

44.     Barteca Intermediate Holdings, LLC's bartaco Mark is a distinctive trademark to both the public and those in the trade in connection with Plaintiffs' products and services. The bartaco Mark serves primarily as a designator of origin of products and services originating from, or sponsored or licensed by, Barteca Intermediate Holdings, LLC.

45.     As a result of the widespread use and display of the bartaco Mark, both the public and those in the trade use the bartaco Mark to identify and refer to Plaintiffs' products and services.

**The bartaco Trade Dress**

46.     Plaintiffs are the owners of a distinctive and protectable trade dress associated with bartaco restaurants.

47.     The bartaco Trade Dress consists of the distinctive overall look, feel, and commercial impression of bartaco restaurants, created by the deliberate combination, coordination, and consistent arrangement of interior design, service presentation, food presentation, staff appearance, and branded graphic elements.

48.     The bartaco Trade Dress includes, without limitation, the following elements, which are implemented consistently and uniformly across bartaco restaurant locations and together create a single, source-identifying commercial impression:

11

49.    Standardized Tabletop Ordering and Service Configuration: A distinctive tabletop ordering and service configuration featuring a paper-based ordering system in which paper order slips and pencils are placed on each table for customers to write their orders.

50.    Coordinated Tabletop Arrangement:  A coordinated tabletop arrangement centered around a dedicated stand or caddy that groups three house-branded or color-coded sauce bottles together with the order slips and pencils, accompanied by a container or jar holding napkins and silverware. The grouping, proximity, and presentation of these items as a single integrated tabletop unit is consistent across bartaco locations and functions as a recognizable visual and experiential feature of the bartaco dining environment.

51.    Food Presentation on Rectangular Metal Trays: The consistent presentation of tacos and other menu items on uniform rectangular metal trays, rather than on conventional plates or bowls. These trays are uniform in size, shape, and finish and are used across bartaco locations as a deliberate and repeated visual element reinforcing bartaco's casual, street-food-inspired aesthetic.

52.    Juice Press Placement at Bar Corners: The consistent placement and prominent display of commercial juice presses at the corners of the bar area. For many years, bartaco has incorporated Rachand-brand commercial juice presses in this specific bar-corner placement across its restaurant locations as a visible and repeated design element reinforcing bartaco's fresh, handcrafted brand identity.

53.    Uniform, Single-Color Service Aprons: The consistent use of single-color, uniform aprons worn by service staff, with a standardized cut, length, and presentation. The aprons function as a visual extension of the bartaco brand within the dining environment and reinforce a clean, minimalist, and cohesive brand presentation across locations.

4899-8235-9696, v. 2

54.     Unified Look and Feel: These elements are deliberately designed to work together and are repeated consistently across bartaco locations, such that customers encounter the same overall visual and experiential presentation regardless of location.

55.     The bartaco Trade Dress is distinctive and protectable. It is arbitrary and inherently distinctive as applied to restaurant services and, in the alternative, has acquired secondary meaning.

56.     bartaco has employed the same distinctive Trade Dress continuously and substantially exclusively for more than a decade, and that Trade Dress is standardized and mandated across all company-owned bartaco restaurant locations rather than varying by restaurant or market.

57.     With approximately thirty-one operating locations, bartaco has repeatedly exposed a substantial consumer base to the same coordinated décor, tabletop ordering system, food presentation, and service elements. The Trade Dress is the result of deliberate, centralized branding decisions reflected in bartaco's formal brand and operations guidelines, not ad hoc or incidental décor choices.

58.     As a result of this long-standing, uniform use, consumers encounter features such as the tabletop ordering system, rectangular metal trays, rustic interior presentation, and bar-corner juice presses associate those elements with bartaco as a single source of restaurant services.

59.     The bartaco Trade Dress is non-functional and therefore protectable under Section 43(a) of the Lanham Act.

60.     Although individual components of the Trade Dress may serve practical purposes when considered in isolation, bartaco's protectable Trade Dress lies in the distinctive selection,

coordination, and arrangement of these elements into a unified visual and experiential presentation.

61.    Restaurants are not required to use paper order slips and pencils, to group sauces, order slips, napkins, and silverware in a single tabletop display, to serve food on rectangular metal trays, or to place commercial juice presses at bar corners. Numerous alternative designs and configurations are readily available and commonly used throughout the restaurant industry.

62.    bartaco's specific combination and presentation of these elements reflects deliberate branding and aesthetic choices rather than functional necessity and is not essential to the use, cost, or quality of restaurant services.

63.    Barteca Intermediate Holdings, LLC, owns all proprietary rights in the bartaco Trade Dress.

64.    Barteca Intermediate Holdings, LLC licenses the bartaco Trade Dress for use in connection with bartaco restaurant services and maintains control over the nature and quality of services offered under the bartaco Trade Dress through uniform brand standards governing restaurant design, décor, service presentation, and customer-facing materials.

65.    Plaintiffs have never abandoned the bartaco Trade Dress.

**Defendants tacobarn Newtown LLC and tacobarn Greenwich LLC**

66.    Defendant tacobarn is a newly established restaurant concept offering restaurant and bar services that directly compete with—and closely mirror—those offered by bartaco.

67.    On information and belief, tacobarn opened to the public in or about November 2025 at 6 Glen Road in the Sandy Hook section of Newtown, Connecticut, operating from a restored two-story barn and marketing itself as a casual, taco-centric dining destination featuring globally inspired menu items and craft cocktails.

14

68.     On information and belief, the tacobarn services, customer base, and dining format targeted by tacobarn substantially overlap with those of bartaco.

69.     tacobarn was founded and is controlled by principal David Boyajian, a former senior executive of bartaco who served as Director of Operations and was among the earliest team members involved in bartaco's expansion.

70.     Boyajian has publicly stated that he was "pretty much employee number one at the first bartaco" and worked closely with bartaco's leadership through approximately 2017.

71.     Through that role, Boyajian was deeply involved in the development and implementation of bartaco's operational model, restaurant presentation, and customer experience, and possessed detailed, first-hand knowledge of bartaco's brand standards, trade dress, and marketplace positioning.

72.     Boyajian launched tacobarn using a name composed of the same two words as bartaco, merely reversed, and for use in connection with identical restaurant and bar services.

73.     Defendants' decision to adopt this name—despite Boyajian's intimate familiarity with the bartaco brand—was not accidental. The name choice, combined with tacobarn's adoption of hallmark elements of bartaco's restaurant presentation, reflects a deliberate effort to evoke the bartaco brand and capitalize on consumer familiarity and goodwill that Defendants did not create.

74.     Chef Adam Greenberg, Boyajian's business partner and a former bartaco employee, also worked at bartaco during the period when bartaco's menu structure, service mechanics, and in-restaurant presentation were being developed and implemented.

75.      Greenberg developed tacobarn's menu, which features tacos, small plates, bowls, salads, and cocktails designed for casual, shareable dining.

76.    As reflected on tacobarn's publicly accessible menu and in-restaurant presentation, tacobarn's offerings are positioned squarely within the same market segment long occupied by bartaco.

77.    As of the filing of this Complaint, Defendants do not own any federal or state trademark registrations or pending applications for the name "tacobarn" or any associated logo. Nevertheless, Defendants proceeded to open and operate under that name without regard for bartaco's longstanding trademark rights.

78.    On or about October 6, 2025, Defendants formed tacobarn Greenwich LLC, a Connecticut limited liability company classified as a full-service restaurant and controlled by the same principals as the Newtown location.

79.    The formation of this entity evidences Defendants' intent to expand the tacobarn concept beyond its initial restaurant, including into Greenwich and surrounding Fairfield County markets where bartaco has a significant presence.

80.    Absent injunctive relief, Defendants' continued use of the infringing name and presentation threatens to multiply consumer confusion and irreparably harm bartaco's brand and goodwill.

**Defendants' Use of the "tacobarn" Name Infringes the bartaco Mark**

81.    Defendants' use of the name "tacobarn" in connection with restaurant and bar services is likely to cause consumer confusion and infringes bartaco's federally registered and common law trademark rights.

82.    The bartaco Mark is distinctive and commercially strong, having been used continuously for more than a decade in connection with a nationally recognized restaurant

4899-8235-9696, v. 2

concept operating dozens of company-owned locations. Through that use, consumers have come to associate the bartaco name with a single source of restaurant and bar services.

83.    The tacobarn name is confusingly similar to the bartaco Mark. Both consist of the same two words—"bar" and "taco"—arranged in reverse order, creating a nearly identical sound, appearance, and overall commercial impression. Consumers encountering the tacobarn name are unlikely to engage in careful linguistic analysis or parse word order; instead, they rely on imperfect recollection and general impressions, which here strongly favor confusion.

84.    The likelihood of confusion is further heightened because Defendants use the tacobarn name in connection with services that are identical to those offered by bartaco. Both parties operate full-service restaurants offering tacos, cocktails, and casual dining experiences, directed to the same customers and marketed through similar channels. The parties operate in overlapping geographic markets, and Defendants have signaled an intent to expand into additional markets where bartaco has an established presence and customer base.

85.    Defendants' selection of the tacobarn name was made with full knowledge of bartaco and its brand. Defendants' principals are former bartaco insiders who were intimately familiar with bartaco's name, reputation, and marketplace positioning. Under these circumstances, the adoption of a confusingly similar name for identical services supports a strong inference that Defendants anticipated—and intended—that consumers would associate tacobarn with bartaco.

86.    Actual confusion is likely and ongoing. Restaurant consumers make purchasing decisions quickly and casually, often based on brand recognition rather than careful comparison. Confusion is particularly likely where, as here, the challenged use occurs in a real-world dining context rather than on a shelf or in a controlled environment.

17

87.    Defendants' continued use of the tacobarn name threatens to mislead consumers into believing that tacobarn is affiliated with, derived from, or sponsored by bartaco.

88.    On information and belief, Defendants' use of the tacobarn name and restaurant presentation has already caused actual confusion among consumers, including instances in which members of the public have inquired whether tacobarn is affiliated with bartaco, tagged bartaco in social media posts relating to Defendants' restaurant, or otherwise expressed confusion regarding the relationship between the two brands. Such confusion is particularly likely in the Connecticut market, where bartaco has an established presence and consumer recognition.

89.    For example, in a publicly accessible social media post discussing Defendants' restaurant, a consumer expressly described the tacobarn dining experience as "[s]imilar to Bar Taco experience," while praising menu items commonly associated with bartaco's curated, shareable taco format. Such consumer commentary reflects real-world marketplace perception and demonstrates that ordinary diners encountering Defendants' restaurant associate it with bartaco, reinforcing the likelihood of confusion caused by Defendants' infringing name and presentation.

90.    Public commentary in local media further reflects the extent to which Defendants' restaurant is perceived as closely associated with bartaco. In a published review of Defendants' restaurant, a local magazine expressly described Defendants' principals as "veterans of bartaco" and characterized tacobarn as "reminiscent" of bartaco in ways extending beyond the similarity of the parties' names. The review repeatedly compared tacobarn to bartaco and framed Defendants' restaurant as a variation on or outgrowth of the bartaco concept. Such third-party media commentary demonstrates that even informed observers encountering Defendants' restaurant understand and describe it through direct reference to bartaco, reinforcing the

18

likelihood that ordinary consumers will mistakenly believe the two concepts are affiliated, connected, or derived from a common source.

91.     Defendants' conduct therefore constitutes trademark infringement and false designation of origin under federal law, as well as unfair competition under applicable state law, and entitles bartaco to injunctive and other equitable relief.

**Defendants Misappropriated the bartaco Trade Dress**

92.     In addition to adopting a confusingly similar name, Defendants have misappropriated and deployed a substantially similar restaurant trade dress that replicates core elements of bartaco's proprietary restaurant experience.

93.     bartaco's trade dress is embodied in the coordinated combination of interior design, tabletop service mechanics, food presentation, and visual cues that together create a distinctive and immediately recognizable commercial impression identifying bartaco as the source of the restaurant services.

94.     Defendants' restaurant adopts multiple hallmark elements of bartaco's trade dress, including a paper order-slip and pencil ordering system placed at each table; a standardized tabletop configuration in which napkins and silverware are placed in a table-accessible canister positioned immediately adjacent to a three-bottle salsa holder featuring sauces of varying spice or heat; and the service of tacos and small plates on rectangular metal trays of similar size, shape, and finish. These elements are not used incidentally or in isolation, but are presented together in a manner that closely mirrors bartaco's tabletop experience and visual presentation.

95.     Defendants have further replicated bartaco's broader restaurant aesthetic and service environment, including a rustic yet curated interior presentation emphasizing natural wood surfaces and warm, ambient lighting, minimalist menu layouts with restrained color

palettes and consistent typography, the prominent placement of commercial juice presses at the corners of the bar area, and the use of uniform, single-color aprons worn by service staff.

96.     On information and belief, Defendants retained RDstudio, the same architectural and interior design firm that designed numerous bartaco restaurant locations, to design Defendants' tacobarn restaurant. Defendant David Boyajian, a former senior bartaco executive, worked with RDstudio on the tacobarn project, further contributing to the substantial similarities between Defendants' restaurant presentation and bartaco's established design.

97.     On information and belief, Defendants' logo and visual branding were developed by a designer who has publicly stated that the tacobarn logo was inspired by the owner's earlier work at bartaco. As described on the designer's own website, the tacobarn logo was created for Defendants' Sandy Hook restaurant and expressly drew inspiration from bartaco. This admission by Defendants' chosen designer further demonstrates that the similarities between Defendants' branding and the bartaco Intellectual Property was intentional and the product of deliberate design choices, not coincidence or independent development.

98.     When viewed as a whole, Defendants' restaurant presentation evokes the same overall look, feel, and customer experience that bartaco has deliberately developed, standardized, and deployed across its locations for more than a decade.

99.     The similarity of the parties' trade dress is especially likely to cause consumer confusion because it operates in the interior restaurant environment, where patrons encounter the brand holistically through décor, service mechanics, and food presentation rather than through careful side-by-side comparison. Ordinary diners encountering Defendants' restaurant are likely to believe that tacobarn is affiliated with, derived from, or otherwise connected to bartaco, or that the restaurant concept is a spin-off, extension, or authorized variant of bartaco.

4899-8235-9696, v. 2

100.    The likelihood of confusion is further heightened by the identity of services, overlap in customer base, geographic proximity, and Defendants' stated or implied plans for expansion. bartaco has a long-established and well-recognized presence in Connecticut and the greater Fairfield County area, and Defendants' adoption of a substantially similar trade dress in the same market increases the risk that consumers will mistakenly associate the two concepts.

101.    Intentional copying strongly reinforces this conclusion. Defendants' principals were formerly senior executives at bartaco and were intimately familiar with bartaco's brand, operations, service mechanics, and customer experience.

102.    Shortly after opening, Defendants adopted multiple signature elements of bartaco's trade dress, and Defendants have publicly acknowledged copying aspects of bartaco's model. Although proof of intent is not required to establish trade dress infringement, the deliberate adoption of bartaco's distinctive presentation by former insiders provides compelling evidence that consumer association with bartaco was anticipated and intended.

103.    Defendants' conduct constitutes trade dress infringement, false designation of origin, and unfair competition in violation of Section 43(a) of the Lanham Act and applicable state law.

104.    Unless enjoined, Defendants' continued use of a confusingly similar trade dress will cause ongoing consumer confusion, irreparable harm to bartaco's brand and goodwill, and erosion of the distinctiveness of bartaco's proprietary restaurant concept.

**Plaintiffs' Cease and Desist Demand**

105.    On or about January 13, 2026, bartaco, through counsel, sent Defendants a detailed cease-and-desist letter advising them of bartaco's trademark and trade dress rights and demanding that Defendants cease use of the infringing tacobarn name and confusingly similar

21

restaurant presentation. The letter explained the basis for bartaco's claims, identified specific infringing conduct, and offered Defendants an opportunity to resolve the matter without litigation through a prompt transition away from the infringing name and trade dress.

106.    Rather than comply, Defendants responded on or about January 22, 2026, disputing bartaco's claims and indicating that they would not agree to cease use of the tacobarn name or materially alter their restaurant presentation. Defendants did not offer to suspend use of the challenged name, did not commit to any concrete transition plan, and did not provide sufficient assurances to prevent ongoing consumer confusion or future expansion under the infringing branding.

107.    Defendants' refusal to take corrective action despite clear notice of bartaco's rights confirms that the infringement is ongoing and deliberate. Absent judicial intervention, Defendants will continue to use a confusingly similar name and trade dress, further eroding bartaco's brand, increasing consumer confusion, and multiplying the harm bartaco will suffer— particularly as Defendants pursue additional locations and expansion.

108.    Defendants' acts are done with intent to trade on and misappropriate the goodwill of the Plaintiff and the Plaintiff's Marks and Trade Dress, to cause confusion and deception in the marketplace, and to divert potential and existing customers of the Plaintiff to the Defendant.

109.    Plaintiff has been, and will continue to be, irreparably harmed by the acts of Defendant, unless enjoined.

110.    There is no adequate remedy at law for this irreparable harm unless an injunction issues.

111.    Defendants' continued use of the tacobarn name and restaurant presentation following receipt of Plaintiffs' cease-and-desist letter constitutes willful and knowing

infringement. Defendants elected to proceed with full knowledge of Plaintiffs' trademark and trade dress rights and the likelihood of consumer confusion, thereby increasing Plaintiffs' damages and exposing Defendants to enhanced remedies, including disgorgement of profits and attorneys' fees.

112.     Defendants' unauthorized use of a confusingly similar name and trade dress deprives Plaintiffs of the ability to control the nature and quality of services rendered under the bartaco brand. Loss of quality control is itself irreparable harm under trademark law and threatens lasting damage to the goodwill and reputation embodied in Plaintiffs' trademarks and trade dress.

113.     Plaintiffs intend to seek preliminary injunctive relief absent a prompt resolution of Defendants' unlawful conduct.

## Count I – Federal Trademark Infringement (15 U.S.C. § 1114)

114.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully set forth herein.

115.     Barteca Intermediate Holdings, LLC is the sole owner of the federally registered BARTACO trademarks (the "bartaco Mark"), including U.S. Registration Nos. 4,352,284 and 4,352,285, covering restaurant and bar services in International Class 43. The registrations are valid, subsisting, and incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

116.     The bartaco Mark and the goodwill symbolized thereby are of great and incalculable value and are highly distinctive of the restaurant and bar services offered under the bartaco brand.

117.     Barteca Intermediate Holdings, LLC licenses the bartaco Mark to Barteca Holdings, LLC and its affiliated operating entities, and exercises ongoing control over the nature

and quality of all services rendered under the bartaco Mark. As a result, all use of the bartaco Mark in commerce inures to the benefit of Barteca Intermediate Holdings, LLC as the trademark owner.

118.    Defendants, without authorization, consent, or license, have used and continue to use the infringing name "tacobarn" in interstate commerce in connection with restaurant and bar services that are identical to those offered under the bartaco Mark.

119.    Defendants' use of the tacobarn name is confusingly similar to the bartaco Mark and is likely to cause confusion, mistake, or deception among consumers as to the source, origin, sponsorship, or affiliation of Defendants' services, including a likelihood that consumers will incorrectly believe Defendants' services are affiliated with, sponsored by, or authorized by Barteca Intermediate Holdings, LLC or its licensees.

120.    Defendants' infringing conduct trades directly on the goodwill associated with the bartaco Mark, which Defendants knew of prior to adoption of the infringing name. Defendants' principals are former bartaco insiders with intimate knowledge of the bartaco brand, further supporting the inference that Defendants adopted the tacobarn name with full awareness of Plaintiffs' superior trademark rights and with the intent to benefit from consumer association with bartaco.

121.    Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and have caused and will continue to cause damage to Plaintiffs, including loss of control over the bartaco Mark, injury to goodwill and reputation, and diversion of customers.

122.    Upon information and belief, Defendants have realized profits and other benefits from their unauthorized use of the infringing name, to which Plaintiffs are entitled.

123.    Defendants' profits are attributable to their misappropriation of Plaintiffs' goodwill and brand recognition, and equity requires disgorgement to prevent unjust enrichment and deter future infringement.

124.    Defendants' infringement is ongoing and will continue unless enjoined by this Court. Plaintiffs have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

125.    Plaintiffs are therefore entitled to injunctive relief, an award of Defendants' profits, damages, attorneys' fees, costs, and all other relief available under 15 U.S.C. §§ 1116 and 1117.

### Count II
### Misrepresentation, False Designation of Origin, Trade Dress Infringement, and Unfair Competition Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)

126.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully set forth herein.

127.    Barteca Intermediate Holdings, LLC is the sole owner of the bartaco Mark and the proprietary bartaco Trade Dress, which together identify bartaco as the source of its restaurant and bar services and embody the goodwill associated with the bartaco brand.

128.    The bartaco Trade Dress consists of the distinctive, non-functional overall look, feel, and commercial impression of bartaco restaurants, created by the deliberate selection, coordination, and consistent arrangement of interior design elements, tabletop service configurations, ordering mechanics, food presentation, staff appearance, and related visual and experiential features, as described above.

129.    Defendants, without authorization, consent, or license, have used and continue to use in interstate commerce a confusingly similar name and a substantially similar restaurant

25

presentation that misappropriates and copies core elements of the bartaco Trade Dress in connection with identical restaurant and bar services.

130.    Defendants' use of a confusingly similar name together with a substantially similar trade dress constitutes the use of a word, term, name, symbol, device, or combination thereof that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' services by Barteca Intermediate Holdings, LLC or its licensees.

131.    Defendants' conduct is likely to cause consumers to believe incorrectly that Defendants' restaurant is affiliated with, derived from, sponsored by, or otherwise connected to bartaco, including that tacobarn is a spin-off, extension, or authorized variation of the bartaco concept.

132.    The likelihood of confusion is heightened by, among other things:

    a.   the strength and distinctiveness of the bartaco Mark and Trade Dress;

    b.   the close similarity between Defendants' name and restaurant presentation and the bartaco brand;

    c.   the identity of services offered by the parties;

    d.   the overlap in customer base and geographic markets; and

    e.   Defendants' knowledge of bartaco's brand, trade dress, and marketplace positioning prior to adopting the infringing name and presentation.

133.    Defendants' principals are former bartaco insiders who were intimately familiar with bartaco's proprietary branding, service mechanics, and restaurant presentation. Defendants' adoption of a confusingly similar name and substantially similar trade dress under these

circumstances supports a strong inference that Defendants intended to trade on bartaco's goodwill and anticipated consumer association with the bartaco brand.

134.    Defendants' acts constitute false designation of origin, trade dress infringement, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

135.    Defendants' unlawful conduct has caused and will continue to cause Plaintiffs irreparable harm, including loss of control over the bartaco brand, dilution of the distinctiveness of the bartaco Trade Dress, injury to goodwill and reputation, and consumer confusion, for which there is no adequate remedy at law.

136.    Defendants' profits are attributable to their misappropriation of Plaintiffs' goodwill and brand recognition, and equity requires disgorgement to prevent unjust enrichment and deter future infringement.

137.    Unless enjoined, Defendants will continue their infringing and unfair competitive conduct. Plaintiffs are therefore entitled to injunctive relief, disgorgement of Defendants' profits, damages, costs, attorneys' fees, and all other relief available under 15 U.S.C. §§ 1116 and 1117.

### Count III – Common Law Trademark Infringement

138.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully set forth herein.

139.    Barteca Intermediate Holdings, LLC is the sole owner of the bartaco trademark and associated goodwill under the common law of the State of Connecticut and throughout the United States. Through long-standing, continuous, and substantially exclusive use in commerce, the bartaco Mark has acquired distinctiveness and functions as a source identifier for Plaintiffs' restaurant and bar services.

140.    Plaintiffs' common law rights in the bartaco Mark predate Defendants' adoption and use of the confusingly similar name "tacobarn."

141.    Defendants, without authorization, consent, or license, have used and continue to use the infringing name tacobarn in connection with restaurant and bar services in a manner that is likely to cause confusion, mistake, or deception among consumers as to the source, origin, sponsorship, or affiliation of Defendants' services.

142.    Defendants' use of the tacobarn name is likely to cause consumers to believe incorrectly that Defendants' services are affiliated with, sponsored by, authorized by, or otherwise connected to Plaintiffs and the bartaco brand.

143.    Defendants adopted and continue to use the infringing name with knowledge of Plaintiffs' prior rights in the bartaco Mark. Defendants' principals are former bartaco insiders who were intimately familiar with the bartaco brand, further supporting an inference of deliberate infringement under Connecticut common law.

144.    Defendants' acts constitute common law trademark infringement and unfair competition under the laws of the State of Connecticut.

145.    As a direct and proximate result of Defendants' infringing conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including loss of control over their trademark, injury to goodwill and reputation, and diversion of customers, for which there is no adequate remedy at law.

146.    Unless enjoined by this Court, Defendants will continue their infringing conduct. Plaintiffs are therefore entitled to injunctive relief and all other relief available under Connecticut common law.

### Count IV – Common Law Unfair Competition

147.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully set forth herein.

148.    Under the common law of the State of Connecticut, unfair competition includes the misappropriation of another's property, reputation, or business advantage, including passing off one's goods or services as those of another and engaging in conduct likely to cause confusion as to source, sponsorship, or affiliation.

149.    Barteca Intermediate Holdings, LLC has developed substantial goodwill and reputation in the bartaco name, brand, and associated restaurant concept through years of continuous, exclusive, and high-quality operation in Connecticut and throughout the United States.

150.    Defendants have engaged in unfair competition by adopting and using the confusingly similar name "tacobarn" and by operating a restaurant concept that is designed to evoke and trade upon the goodwill associated with the bartaco brand, thereby creating a likelihood of confusion among consumers as to the affiliation, connection, or association between Defendants and Plaintiffs.

151.    Defendants' conduct constitutes passing off and misappropriation of Plaintiffs' goodwill under Connecticut common law. Defendants have sought to capture the benefit of consumer recognition and trust developed by Plaintiffs, without bearing the costs of developing their own independent brand identity.

152.    Defendants adopted and continue to use the tacobarn name with knowledge of Plaintiffs' prior rights in the bartaco brand. Defendants' principals are former bartaco insiders who were intimately familiar with bartaco's name, reputation, and marketplace positioning, further demonstrating that Defendants' conduct was knowing, deliberate, and unfair.

153.    As a direct and proximate result of Defendants' unfair competitive conduct, Plaintiffs have suffered and will continue to suffer harm, including loss of goodwill, erosion of brand distinctiveness, diversion of customers, and loss of control over their brand identity.

154.    Defendants' conduct is ongoing and will continue unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

155.    Plaintiffs are entitled to injunctive relief and all other relief available under Connecticut common law to prevent Defendants from continuing their unfair competition.

**Count V – Violation of CUTPA (Conn. Gen. Stat. §§ 42-110a *et seq*.)**

156.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully set forth herein.

157.    This claim is against Defendants for unfair competition and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq*.

158.    Plaintiffs and Defendants are both engaged in the conduct of trade or commerce within the State of Connecticut as defined by CUTPA.

159.    Defendants' conduct constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of CUTPA, Conn. Gen. Stat. §§ 42-110a *et seq*.

160.    Defendants' acts of trademark infringement, unfair competition, and unfair or deceptive business practices include, but are not limited to:

a.    Using the infringing name "tacobarn" in direct competition with Plaintiffs' established bartaco restaurant service in Connecticut;

4899-8235-9696, v. 2

b.  Adopting and using the infringing name "tacobarn" with knowledge of the bartaco Mark;

c.  Trading on the goodwill and reputation associated with the bartaco Mark;

d.  Creating actual confusion among consumers and other persons in the restaurant industry; and

e.  Continuing to use the infringing name "tacobarn" despite receiving notice from the Plaintiff and being aware of Plaintiffs' rights.

161.    Defendants' conduct offends public policy as established by common law, statutes, and other established concepts of fairness.

162.    Defendants' acts and practices are immoral, unethical, oppressive, and unscrupulous.

163.    Defendants' conduct has caused and continues to cause substantial injury to Plaintiffs and to its business and property, including injury to its goodwill and reputation.

164.    Defendants have engaged in these unfair and deceptive practices willfully and knowingly.

165.    As a direct and proximate result of Defendants' unfair competition and unfair or deceptive trade practices, Plaintiffs have suffered and will continue to suffer damages, including but not limited to, loss of goodwill, loss of business reputation, loss of business, and loss of profits.

166.    By reason of the foregoing, Plaintiffs are entitled to recover their actual damages, punitive damages, costs, and reasonable attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

167.    Plaintiffs have no adequate remedy at law for Defendants' unfair competition and unfair or deceptive trade practices for common law trademark infringement.

168.     In addition to the federal registration owned by Barteca Intermediate Holdings, LLC, as set forth above, the bartaco Mark enjoys common law rights in Connecticut and throughout the United States. These rights are senior and superior to any rights which the Defendants may claim.

169.     Defendants' infringement will continue unless enjoined by the Court.

**Count VI – Declaratory Judgment (28 U.S.C. § 2201)**

170.     Plaintiff realleges the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

171.     An actual and justiciable controversy exists between Plaintiffs and Defendants concerning the parties' respective rights and obligations with respect to the bartaco Mark, the bartaco Trade Dress, and Defendants' use of the confusingly similar name "tacobarn" in connection with restaurant and bar services.

172.     Defendants have adopted and continue to use the tacobarn name and a substantially similar restaurant presentation despite Plaintiffs' prior rights, despite notice of those rights, and despite the resulting likelihood of consumer confusion. Defendants have further formed additional entities and taken steps evidencing an intent to expand use of the tacobarn name and restaurant concept into additional markets where bartaco operates and enjoys established goodwill.

173.     Defendants' conduct reflects an implicit claim of right to continue using the tacobarn name and related restaurant presentation in competition with bartaco, including an assertion that such use is lawful and does not infringe Plaintiffs' trademark or trade dress rights. Plaintiffs dispute any such claim.

174.     Plaintiffs contend, and Defendants deny that:

    a.   Barteca Intermediate Holdings, LLC is the sole owner of the bartaco Mark and bartaco Trade Dress;

    b.   Defendants have no right, license, or lawful basis to use the tacobarn name or any confusingly similar designation in connection with restaurant and bar services;

    c.   Defendants' use of the tacobarn name and restaurant presentation infringes Plaintiffs' trademark and trade dress rights and constitutes unfair competition; and

    d.   Defendants are not entitled to expand, register, or continue the use of the tacobarn name or related presentation without infringing Plaintiffs' rights.

175.    Absent a declaratory judgment, Plaintiffs face continuing uncertainty and ongoing harm arising from Defendants' continued use and threatened expansion under the tacobarn name, including loss of control over Plaintiffs' brand, erosion of goodwill, and persistent consumer confusion.

176.    A declaration by this Court will serve a useful purpose in clarifying and settling the legal relations at issue and will afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

177.    Accordingly, Plaintiffs seek a declaration that Defendants' use of the tacobarn name and related restaurant presentation infringes Plaintiffs' rights in the bartaco Mark and bartaco Trade Dress, that Defendants have no lawful right to continue such use, and that Plaintiffs are entitled to enforce their rights to prevent Defendants' continued and future infringement.

## Prayer for Relief

WHEREFORE, Plaintiffs request that the Court enter judgment against the Defendants and prays for the following relief:

1.    That judgment be entered in favor of Plaintiffs and against Defendants on each and every Count in this Complaint;

2.    For entry of an order and judgment preliminarily and permanently enjoining Defendants, their members, managers, officers, principals, employees, agents, attorneys, successors, affiliates, subsidiaries, assigns, and all persons in active concert or participation with any of them, during the pendency of this action and permanently thereafter, from:

    a.  using, advertising, marketing, promoting, displaying, or offering restaurant or bar services under the name "tacobarn", or under any other name, mark, designation, or branding that is confusingly similar to Plaintiff's BARTACO mark;

    b.  engaging in any conduct that infringes or dilutes Plaintiff's rights in the BARTACO mark or otherwise constitutes trademark infringement, false designation of origin, or unfair competition under the Lanham Act or applicable state law;

    c.  using or authorizing the use of any trade dress that is confusingly similar to bartaco's proprietary trade dress, including but not limited to bartaco's tabletop ordering system, tabletop configuration of napkins, silverware, and multi-bottle salsa presentation, tray-based food presentation, and coordinated interior and service presentation;

    d.  engaging in any activity likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' restaurant services by Plaintiff;

    e.  making or displaying any statement, representation, or depiction that is likely to lead the public or those in the trade to believe that Defendants' restaurant services

4899-8235-9696, v. 2

are approved, endorsed, licensed, sponsored, authorized by, or otherwise affiliated with Plaintiff;

f.   registering, applying to register, or maintaining any trademark, service mark, trade name, domain name, social media handle, or other source identifier consisting of or incorporating "tacobarn" or any mark or trade dress confusingly similar to BARTACO or bartaco's trade dress; and

g.   assisting, aiding, or abetting any other person or entity in engaging in any of the foregoing acts, including by forming new entities, opening additional locations, transferring assets, or using any other device designed to evade or circumvent the prohibitions set forth herein.

3.      For entry of an order and judgment preliminarily and permanently enjoining Defendants, their members, managers, officers, principals, employees, agents, attorneys, successors, affiliates, subsidiaries, assigns, and all persons in active concert or participation with any of them, during the pendency of this action and permanently thereafter, from:

a.   operating, maintaining, posting to, or otherwise using any social media account, page, handle, profile, or digital presence incorporating the name "tacobarn" or any confusingly similar designation, including but not limited to accounts on Instagram, Facebook, TikTok, X (Twitter), or similar platforms;

b.   using the tacobarn name or any confusingly similar designation in metadata, hashtags, SEO, digital advertising, or backend digital identifiers;

c.   transferring, selling, assigning, or attempting to preserve any goodwill associated with such infringing accounts; and

      d.   transferring to Plaintiff bartaco all right, title, and interest in any social media accounts, handles, usernames, pages, or digital assets incorporating the tacobarn name, or, in the alternative, permanently deactivating such accounts under Court supervision, at Plaintiff's election.

4.      For an order directing Defendants to complete a mandatory transition away from the tacobarn name and to implement material modifications to their restaurant presentation sufficient to eliminate consumer confusion, within a Court-ordered timeframe;

5.      For an order directing Defendants to file with the Court and serve on Plaintiff, within thirty (30) days after entry of any injunction, a sworn written statement detailing the manner and form in which Defendants have complied with the Court's injunction;

6.      For an order directing Defendants to deliver up for destruction all signage, menus, uniforms, packaging, promotional materials, marketing assets, and other materials bearing the tacobarn name or any infringing trade dress;

7.      For an order requiring Defendants to withdraw or abandon any trademark applications or claims of right in the tacobarn name or any confusingly similar designation, and declaring that Defendants have no right, title, or interest therein;

8.      For an accounting of Defendants' profits, and an award of damages, disgorgement, and any enhanced damages as permitted by law, to the extent necessary to prevent unjust enrichment and deter future infringement;

9.      For reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1117(a), based on Defendants' knowing and willful infringement following notice;

10.     For pre-judgment and post-judgment interest at the maximum rate permitted by law;

4899-8235-9696, v. 2

11.    For such other and further relief as the Court deems just and proper.

**Jury Demand**

Plaintiffs request a trial by jury for all issues so triable.

BARTECA HOLDINGS, LLC

Respectfully Submitted,

Date: February 18, 2026        /s/ Gregory S. Kimmel
                              Gregory S. Kimmel (ct28203)
                              Berchem Moses PC
                              1221 Post Road East, Suite 301
                              Westport, CT 06880
                              Telephone No.: (203) 227-9545
                              Juris No.: 065850
                              Email: gkimmel@berchemmoses.com

                              /s/ Walter B. Welsh
                              Walter B. Welsh (ct27210)
                              Welsh IP Law LLC
                              PO Box 1267
                              Darien, CT 06820
                              Tel:  203-321-6303

                              Email: litigation@welshiplaw.com
                                      walter@welshiplaw.com

                              ATTORNEYS FOR PLAINTIFFS

37

VERIFICATION
Plaintiff Barteca Holdings, LLC

I, Levi Martin, am the Chief Financial Officer and Chief Strategy Officer of the Plaintiff Barteca Holdings, LLC. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself and the activities of Barteca Holdings, LLC and of the Defendants are true and correct to the best of my knowledge, information, and belief.

Dated this 18th day of February, 2026.

_____
Levi Martin

38

4911-9543-1312 v.1

VERIFICATION
Plaintiff Barteca Intermediate Holdings, LLC

I, Levi Martin, am the Chief Financial Officer and Chief Strategy Officer of the Plaintiff Barteca Intermediate Holdings, LLC. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself and the activities of Barteca Intermediate Holdings, LLC and of the Defendants are true and correct to the best of my knowledge, information, and belief.

Dated this 18th day of February, 2026.

_____
Levi Martin