UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARTECA HOLDINGS LLC and<br>BARTECA INTERMEDIATE HOLDINGS LLC,<br><br>      *Plaintiffs,*<br><br>   *v.*<br><br>TACOBARN NEWTOWN LLC and<br>TACOBARN GREENWICH LLC,<br><br>      *Defendants.* | 3:26-cv-00250-VDO |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

March 31, 2026

HILARY B. MILLER (ct10410)
Law Offices of Hilary B. Miller
500 West Putnam Avenue – Suite 400
Greenwich, Connecticut 06830-6096
Telephone: (203) 587-7000
Facsimile: (914) 206-3727
Email: hilary@miller.net

*Attorney for Defendants*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................i

TABLE OF AUTHORITIES .............................................................................ii

PRELIMINARY STATEMENT........................................................................ 1

STATEMENT OF FACTS................................................................................. 3

STANDARD OF REVIEW ............................................................................... 4

ARGUMENT..................................................................................................... 5

Point I    ..................................................................................................... 5
PLAINTIFFS' TRADEMARK INFRINGEMENT CLAIMS FAIL .......................... 5
AS A MATTER OF LAW............................................................................... 5

    A.   The BARTACO Mark Is Weak and Entitled Only to Narrow Protection. .... 5
    B.   The Marks BARTACO and TACOBARN Are Not Confusingly Similar. ...... 6
    C.   The Remaining *Polaroid* Factors Do Not Save Plaintiffs' Claims............... 12
    D.   The Crowded Field of "Taco" + [Word] Marks Further Weakens Any
Inference of Confusion................................................................................ 14
    E.   The Prosecution History of Plaintiffs' Own Registrations Confirms That the
Marks Convey Opposite Commercial Impressions............................................. 15

Point II    ................................................................................................... 16
PLAINTIFFS' TRADE DRESS CLAIMS FAIL AS A MATTER OF LAW............ 16

    A. The Complaint Fails to Articulate a Legally Cognizable Trade Dress.......... 16
    B. Plaintiffs' "Look and Feel" Theory Would Improperly Monopolize Standard
Restaurant Practices. ................................................................................. 18
    C. The Claimed Features Are Functional Methods of Service, Not Source-
Identifying Design. .................................................................................... 19
    D. Plaintiffs Fail to Plead Distinctiveness or Secondary Meaning as to the
Asserted Trade Dress. ............................................................................... 20

Point III    .................................................................................................. 21
PLAINTIFFS' CUTPA CLAIM FAILS AS A MATTER OF LAW ........................ 21

Point IV    .................................................................................................. 22
PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IS DUPLICATIVE AND
SHOULD BE DISMISSED ........................................................................... 22

CONCLUSION ............................................................................................... 23

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234 (2d Cir. 2024)........................... 4, 10

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976)............... 5

*Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384 (2d Cir. 1995)...................... 5, 6, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................... 4, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 4

*Brennan's, Inc. v. Brennan's Rest., LLC*, 360 F.3d 125 (2d Cir. 2004) .................... 6, 8

*Conaway v. Prestia*, 191 Conn. 484 (1983) ................................................ 22

*Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993) ............. 6

*In re Barteca Restaurants, LLC*, Ser. Nos. 85202482 & 85202583 (T.T.A.B. Feb. 1, 2013) .................................................................................. 15

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)........................................ 20

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995).......... 17

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997).. 16, 18

*Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576 (2d Cir. 1991) ........................ 12

*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000) .............................. 9

*Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576 (2d Cir. 2005) .............. 9

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114 (2d Cir. 2001)......... 21

*O Zon Inc. v. Charles*, 272 F. Supp. 2d 307 (S.D.N.Y. 2003).................................... 17

*Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577 (2d Cir. 1993) 7, 8

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985)............................... 6

*Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158 (2d Cir. 2004) ........ 13, 14

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) .......... 4, 5, 12, 13

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995)..........................................20

*Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134 (2d Cir. 1991) ...............................................................................................................9

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754 (8th Cir. 2010) ... 13

*Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373 (2d Cir. 2005).................................5

*Starter Corp. v. Converse, Inc.*, 84 F.3d 592 (2d Cir. 1996).......................................22

*Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998) ............ 5, 6, 7, 16

*Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174 (2d Cir. 2021) .........................4

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001) ..............................19

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).........................................18

*Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112 (2d Cir. 1984) .................9

*W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567 (2d Cir. 1993) .......................6, 8, 14

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000)............................21

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)...........................................................23

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) .................................17

*Zazu Designs v. L'Oréal, S.A.*, 979 F.2d 499 (7th Cir. 1992)......................................13

## Statutes

15 U.S.C. § 1065.............................................................................................................6

Conn. Gen. Stat. §§ 42-110a ........................................................................................18

## Other Authorities

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 4

Fed. R. Evid. 201(b)(2) .................................................................................................11

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARTECA HOLDINGS LLC and BARTECA INTERMEDIATE HOLDINGS LLC, <br><br> Plaintiffs, <br><br> *v.* <br><br> TACOBARN NEWTOWN LLC and TACOBARN GREENWICH LLC, <br><br> Defendants. | 3:26-cv-00250-VDO |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

It is a truth universally acknowledged among trademark lawyers that the world contains only so many ways to say "taco." Plaintiffs, proprietors of the mark BARTACO, would have this Court believe that they have cornered the market not merely in tacos, but on the very idea of combining the word "taco" with any other word in the English language. By that logic, the proprietors of every *taquería* from Tucson to Tallahassee should be trembling. Fortunately, the law of trademarks is not so indiscriminate—and neither are consumers. Nobody walks into a TACOBARN expecting a BARTACO, any more than one would wander into a barn expecting a bar.

Defendants Tacobarn Newtown LLC and Tacobarn Greenwich LLC respectfully submit this memorandum of law in support of their motion to dismiss pursuant to Rule 12(b)(6), *Fed. R. Civ. P.* As demonstrated below, plaintiffs' verified complaint

("*Compl.*") fails to state a claim upon which relief can be granted and should be dismissed in its entirety.

This case involves two restaurant names—BARTACO and TACOBARN—each composed of commonplace, generic English words describing their respective establishments: "bar," "taco," and "barn." Plaintiffs seek an extraordinary monopoly over the combination of two of the most generic terms in the restaurant lexicon, attempting to prevent a competitor from using an entirely different mark that merely happens to contain the same dictionary words in a different arrangement and with a different third word. The Lanham Act does not countenance such overreach.

Even accepting all well-pleaded factual allegations in the complaint as true, plaintiffs' allegations do not plausibly establish a likelihood of confusion. The BARTACO mark, composed entirely of generic and descriptive components, is inherently weak and entitled to only the narrowest scope of protection. The marks BARTACO and TACOBARN differ materially in appearance, sound, structure, and commercial impression. Plaintiffs' trade dress claim fares no better: the elements identified in the complaint—paper order slips, rectangular metal trays, napkin canisters, salsa bottles, juice presses, and staff aprons—are functional, utilitarian features common throughout the restaurant industry. No such combination of generic elements gives rise to a protectable trade dress claim under federal law. For the same reasons, plaintiffs' derivative state law claims fail.

## STATEMENT OF FACTS

The facts are drawn from the complaint ("*Compl.*"), which the Court must accept as true for purposes of this motion. For the reasons stated herein, however, those facts—even taken in the light most favorable to plaintiffs—do not give rise to any viable claim for relief.

Plaintiffs operate BARTACO, a chain of approximately 31 casual dining restaurants serving tacos, cocktails, and Latin-inspired fare. *Compl.* ¶¶2, 24. Plaintiff Barteca Intermediate Holdings, LLC owns two federal registrations for the BARTACO mark covering restaurant and bar services. *Compl.* ¶32. Plaintiffs assert that these registrations have achieved incontestable status. *Compl.* ¶34.

Defendant Tacobarn Newtown LLC opened a restaurant in Sandy Hook, Connecticut, in approximately November 2025, operating under the name TACOBARN from a restored two-story barn. *Compl.* ¶67. Defendant Tacobarn Greenwich LLC was formed in October 2025 as a Connecticut limited liability company. *Compl.* ¶78. Defendants' principal, David Boyajian, previously worked at BARTACO as director of operations. *Compl.* ¶69.

Plaintiffs allege that the marks BARTACO and TACOBARN are confusingly similar because they "share the same dominant words" (*Compl.* ¶5) and that TACOBARN's restaurant incorporates elements of BARTACO's purported trade dress, including paper order slips, rectangular metal trays, a tabletop salsa bottle arrangement, staff aprons, and bar-corner juice presses. *Compl.* ¶¶49–53, 94–95.

-3-

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), *Fed. R. Civ. P.*, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor, but is not required to credit "bare assertions," "conclusory allegations," or legal conclusions couched as factual statements. *Id.*

The Second Circuit has confirmed that likelihood of confusion in a trademark case may be resolved at the pleading stage where the *Polaroid* factors, assessed on the face of the complaint, compel the conclusion that no confusion is plausible. Where, as here, the marks' overall impressions diverge and the shared elements are weak, dismissal at the pleading stage is appropriate. *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234 (2d Cir. 2024) (affirming dismissal on the pleadings). Similarly, trade dress claims may be dismissed where the asserted dress is functional as a matter of law or where the complaint fails to allege facts sufficient to establish distinctiveness. *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 181 (2d Cir. 2021).

## ARGUMENT

### Point I

### PLAINTIFFS' TRADEMARK INFRINGEMENT CLAIMS FAIL
### AS A MATTER OF LAW

**A.  The BARTACO Mark Is Weak and Entitled Only to Narrow Protection.**

The threshold inquiry in any likelihood-of-confusion analysis is the strength of the senior mark. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). A mark's strength is determined by both its conceptual classification along the *Abercrombie* spectrum and its commercial strength in the marketplace. *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976).

The constituent terms "bar" and "taco" are commonplace and highly descriptive in the restaurant industry. Even granting that the composite mark BARTACO is valid and incontestable, its commercial strength does not erase the conceptual weakness of a mark built from common restaurant terms, and the mark therefore is entitled only to narrow protection against materially different overall commercial impressions. *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998); *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 394–95 (2d Cir. 1995). Given the weakness of the shared terms, these differences are legally dispositive under *Streetwise*.

Plaintiffs' assertion that the BARTACO registrations have achieved incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065, does not alter that conclusion. Incontestability bars certain validity challenges, but it does not convert a conceptually weak mark into a strong one or expand the scope of protection against

nonidentical marks. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998).

The relevant inquiry, therefore, is not whether BARTACO is incontestable (and therefore may remain registered), but rather how much exclusivity follows from a composite mark built from common restaurant words. Under settled Second Circuit law, marks composed of commonplace or highly descriptive matter receive only restricted protection, particularly where the challenged mark creates a materially different overall commercial impression. See *Brennan's, Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 132 (2d Cir. 2004); *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 394 (2d Cir. 1995). Where dissimilarity is apparent on the face of the marks, courts may resolve confusion as a matter of law under *Polaroid*.

## B.   The Marks BARTACO and TACOBARN Are Not Confusingly Similar.

Marks must be compared as consumers encounter them in the marketplace, based on their overall impression, rather than by dissecting individual components. *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993); *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir. 1993).

Assessed as consumers encounter them in the marketplace, the marks do not convey the same total commercial impression: BARTACO suggests a bar-centered taco concept, whereas TACOBARN suggests a rustic or barn-themed taco establishment. That difference in semantic content, sound, and visual structure is dispositive where the shared matter consists of common restaurant words.

In sight and sound, the marks differ materially. BARTACO places "bar" first and ends with the open vowel sound in "taco"; TACOBARN places "taco" first and

ends with the closed, harder sound of "barn." The two terms therefore begin and end differently, are stressed differently in ordinary speech, and present different visual structures on the page.

The distinction between "bar" and "barn" also changes meaning and consumer expectation. A bar-centered restaurant concept is not the same thing as a barn-themed venue. Even where two marks share descriptive or highly suggestive matter, those differences in meaning and presentation matter because the inquiry turns on the total commercial impression, not on lexical overlap in isolation. See *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993).

That principle has particular force here because the shared matter consists of common restaurant words. Plaintiffs cannot obtain broad exclusivity over every mark that combines "taco" with another ordinary establishment term; they must instead plead similarity sufficient to make confusion plausible notwithstanding the weakness of the shared elements. *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998).

Courts in this Circuit repeatedly reject confusion theories built on common components where the marks, considered as a whole, convey different marketplace impressions. For example, in *Streetwise*, the Second Circuit held that STREETWISE and STREETSMART were not confusingly similar despite the shared word "Street," emphasizing both the relative weakness of the common matter and the marks' differing overall impressions. *Id.* at 744–45. Similarly, in *Brennan's, Inc. v. Brennan's*

*Rest., LLC*, 360 F.3d 125 (2d Cir. 2004), the Court held that a mark built from commonly used matter in the restaurant field received only restricted protection. *Id.* at 132. Those decisions confirm that plaintiffs must show more than shared restaurant vocabulary.

Here they have not. On the face of the complaint, the differences in sound, structure, and meaning between BARTACO and TACOBARN outweigh any similarity arising from shared common words, and the similarity factor therefore does not plausibly support confusion.

As noted *supra*, the Second Circuit evaluates marks in their totality, asking whether they create a similar overall commercial impression in the minds of ordinary consumers. *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 571–72 (2d Cir. 1993); *see also Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993) (marks must be evaluated as they appear to consumers in the marketplace, not parsed into their component parts). Assessed on that basis, the marks here differ markedly: BARTACO projects a bar-and-taco fusion concept; TACOBARN evokes a rustic, barn-style establishment. The overall commercial impressions weigh strongly against any inference of confusion.

The common thread running through these decisions is that marks composed of generic or descriptive components enjoy only narrow protection, and a plaintiff asserting such a mark must demonstrate a degree of similarity far exceeding the mere

sharing of common words. Given the weakness of the shared term "taco" and the materially different semantic and structural composition of the marks, the similarity factor weighs against confusion as a matter of law.

The Second Circuit has long recognized that the similarity-of-the-marks factor, although ordinarily only one of eight *Polaroid* considerations, can in an appropriate case be dispositive of the likelihood-of-confusion inquiry. In *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000), the court affirmed summary judgment for the defendant on the ground that the plaintiff's mark ICE BREAKERS, used for breath-freshening chewing gum, was not infringed by the defendant's competing mark DENTYNE ICE, notwithstanding the shared use of the word "Ice." The court held that "in an appropriate case, the 'similarity of the marks' factor can be dispositive and will warrant summary judgment for an infringement defendant 'if the court is satisfied that the . . . marks are so dissimilar that no question of fact is presented.'" *Id.* at 46 (quoting *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir. 1991) (in turn quoting *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir. 1984))).

The Second Circuit reaffirmed this principle in *Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 579 (2d Cir. 2005). That case involved competing soy protein drink mixes marketed under the trade dresses SPIRU-TEIN and SOYTEIN, respectively. The court reiterated that "in an appropriate case, the 'similarity of the marks' factor can be dispositive," *id.* at 579 (quoting *Nabisco*, 220 F.3d at 46).

Most recently, and most pertinently, the Second Circuit applied this principle at the *pleading stage* in *1-800 Contacts, Inc.,* 119 F.4th at 255. Although that case arose in the specific context of keyword search advertising, the court's reasoning rests squarely on the general *Polaroid* framework and is directly applicable here. The plaintiff, 1-800 Contacts, asserted the federally registered marks 1-800 CONTACTS and related formulations; the defendant, doing business as Warby Parker, had pur-chased those marks as search-engine keywords to trigger its own paid advertise-ments. The plaintiff contended that consumers searching for "1-800 Contacts" would encounter Warby Parker advertisements and be confused as to source or affiliation. The court conducted a full *Polaroid* analysis and found that four of the eight factors—strength of the mark, competitive proximity of the products, relative quality, and good faith—favored the plaintiff, while a fifth (bridging the gap) was irrelevant. Despite this seemingly favorable balance, the court held that the plaintiff's complaint must be dismissed because the marks actually presented to consumers—1-800 CONTACTS on the one hand, and WARBY PARKER on the other—were "substantially different." *Id.* at 251. The court concluded: "[T]he dissimilarity of the marks factor is dispositive in this case; 1-800 has not adequately alleged likelihood of consumer confusion." *Id.* at 255 (citing *Nabisco,* 220 F.3d at 46; *Natural Organics,* 426 F.3d at 579).

The significance of *1-800 Contacts* to the present motion cannot be overstated. It is the Second Circuit's most recent and most emphatic statement of three interre-lated propositions: first, that the similarity-of-the-marks factor can be dispositive of the entire *Polaroid* inquiry; second, that it can be so even when a majority of the

remaining *Polaroid* factors favor the plaintiff; and third, that a court may reach this conclusion *at the pleading stage*, before any discovery, where the facial dissimilarity of the marks is apparent from the complaint itself. The keyword advertising context in which the case arose does not limit its doctrinal force. The court did not announce a special rule for keyword cases; rather, it applied the standard *Polaroid* test, evaluated the marks as they would be perceived by consumers, and held—as a matter of law—that no plausible likelihood of confusion existed because the marks were too dissimilar. That holding governs any case in which the marks at issue are facially dissimilar, regardless of the channel of commerce in which the alleged confusion occurs.

Here, the marks BARTACO and TACOBARN differ materially in structure, wording, and overall commercial impression. The marks share only the common, descriptive elements "taco" and the letters "bar," rearranged in different order and combined, in the case of defendant's mark alone, with the letter "n," to produce fundamentally different composite terms. BARTACO places the dominant element "bar" first and appends "taco" as a modifier, connoting a bar that serves tacos. TACOBARN reverses the emphasis entirely, placing "taco" first and pairing it with the wholly distinct word "barn"—a word that evokes a rustic, informal setting bearing no resemblance whatsoever to the upscale, cocktail-oriented connotations of "bar." As in *Nabisco*, where the shared element "Ice" was insufficient to overcome the obvious dissimilarity between ICE BREAKERS and DENTYNE ICE, the common elements "taco" and "bar/barn" are insufficient to bridge the fundamental differences in the

marks' overall commercial impressions. And as in *1-800 Contacts*, where the court dismissed at the pleading stage notwithstanding four *Polaroid* factors in the plaintiff's favor, the dissimilarity here is so apparent on the face of the complaint that no amount of discovery can cure the deficiency. The dissimilarity factor is dispositive, and the complaint must be dismissed on this motion.

## C.  The Remaining *Polaroid* Factors Do Not Save Plaintiffs' Claims.

Although some *Polaroid* factors may superficially favor plaintiffs, the complaint still does not plausibly allege likely confusion because the asserted mark is weak, and the marks themselves are materially dissimilar. Although the *Polaroid* test is ordinarily resolved through multifactorial balancing, as noted above, the Second Circuit has confirmed that the analysis may be resolved at the pleading stage where the marks are so dissimilar in overall commercial impression that likelihood of confusion is implausible as a matter of law—even accepting all well-pleaded facts as true.

*Actual confusion.* The complaint alleges, at most, association or comparison, not actionable source confusion. A social-media comment describing an experience as "similar" and media commentary characterizing a restaurant as "reminiscent" do not suggest that consumers believed TACOBARN originated with, was sponsored by, or was affiliated with plaintiffs. *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991). To the contrary, this evidence shows no confusion whatsoever; it shows *differentiation* and a recognition that Tacobarn is *not* bartaco ("[s]imilar to bartaco experience"; principals are "veterans of bartaco" and thus no longer with it; Tacobarn is "reminiscent" of bartaco).

-12-

*Intent.* The relevant question is not defendants' mere awareness of plaintiffs' mark, but whether the complaint plausibly alleges an intent to deceive consumers as to source or affiliation. Mere knowledge that BARTACO exists—even coupled with a former employee's familiarity with plaintiffs' operations—does not by itself plausibly allege deceptive intent. Intent to compete does not give rise to an inference of intent to deceive. *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754 (8th Cir. 2010).

The remaining factors do not bridge the gap. Competitive proximity cannot override the weakness of the asserted mark and the substantial difference in commercial impression between the names at issue. *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 164 (2d Cir. 2004).

Viewed in their totality, the pleaded *Polaroid* factors do not make confusion plausible; and Counts I through IV should therefore be dismissed.

Finally, the name TACOBARN reflects a straightforwardly legitimate descriptive purpose: defendants operate an actual barn—a "restored two-story barn in Sandy Hook, Connecticut." *Compl.* ¶67. *Zazu Designs v. L'Oréal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) (bad faith not found where adoption of a similar mark was explicable on non-infringing grounds).

Viewed in their totality, the *Polaroid* factors compel the conclusion that no likelihood of confusion exists as a matter of law. Counts I through IV of the complaint should accordingly be dismissed.

**D.   The Crowded Field of "Taco" + [Word] Marks Further Weakens Any Inference of Confusion.**

The restaurant market is littered with "Taco" + [word] marks, including Taco Bell, Taco Bueno, Taco Bamba, Taco Bravo, Taco Boy, Taco Bus, Taco Bodega, Taco Brothers, Taco Bistro, and Taco Beach—and these are only the "B" words (like defendants' mark). These examples are offered as illustrations of category saturation rather than as independent evidentiary proof: most are long-established commercial enterprises with publicly accessible websites, and many hold federal trademark registrations verifiable from publicly available USPTO records.

At the pleading stage, it is enough that "taco" is an obviously common term in the relevant restaurant category. That reality narrows the scope of protection for marks sharing that wording and reduces the significance of overlap in the term "taco" standing alone. *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 163–64 (2d Cir. 2004); *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993).

Accordingly, even without relying on an evidentiary catalogue of third-party uses, the complaint pleads a marketplace context that weakens any inference that ordinary consumers would assume a common source merely because two taco-restaurant names share the word "taco."

### E.   The Prosecution History of Plaintiffs' Own Registrations Confirms That the Marks Convey Opposite Commercial Impressions.

The prosecution history of plaintiffs' registrations, of which this Court may take judicial notice, *Fed. R. Evid.* 201(b)(2), materially undercuts plaintiffs' theory of confusion. Both registrations were initially refused on the ground that BARTACO is merely descriptive of bar and restaurant services. *In re Barteca Restaurants, LLC*, Ser. Nos. 85202482 & 85202583 (T.T.A.B. Feb. 1, 2013), slip op. at 3 (also available at https://bit.ly/barteca).

The Board reversed on the applicant's essentially unopposed argument, because of "the unnatural order of the words" in BARTACO and because "some mental reasoning is required" to determine the nature of the then-applicant's services. *Id.* at 8. Plaintiffs therefore rely on a registration which they were only able to procure by asserting its unusual word order, but that same reasoning supports defendants' position that TACOBARN conveys a different impression by using the more natural food-plus-establishment sequence.[1]

That prosecution history is persuasive context, not dispositive estoppel. Defendants invoke it solely as probative background—evidence of how plaintiffs' own representatives characterized the mark's distinctiveness before an administrative examiner—and advance no argument sounding in claim preclusion, issue preclusion, or

---

[1]Plaintiffs aver that defendant uses "a mark composed of the same two words as bartaco, merely reversed," *Compl.* ¶4. The irony is rich here. Plaintiffs procured their trademark registration only by urging the Board that *the order of the words matters*. Here, they argue that it does not.

any form of binding estoppel. But it strongly suggests that plaintiffs' own mark derived whatever distinctiveness it possessed from its unusual construction, whereas TACOBARN communicates a different idea in a different sequence. *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743–44 (2d Cir. 1998); *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 395 (2d Cir. 1995).

The same record also shows that plaintiffs previously criticized improper dissection and reversal of BARTACO before the Board. That prior position does not judicially estop plaintiffs here, but it does underscore the inconsistency in now urging the Court to focus on shared components and reversed order while downplaying the distinct overall impression of TACOBARN.

**Point II**

**PLAINTIFFS' TRADE DRESS CLAIMS FAIL AS A MATTER OF LAW**

**A. The Complaint Fails to Articulate a Legally Cognizable Trade Dress.**

The threshold defect in plaintiffs' trade-dress theory is non-cognizability—not merely overbreadth. To state a viable trade-dress claim, a plaintiff must provide a "precise expression of the character and scope of the claimed dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). The Second Circuit has explained why that requirement is substantive rather than technical: "Without such a precise expression of the character and scope of the claimed dress, it is impossible to evaluate the degree to which the alleged trade dress is distinctive, or the scope of protection, if any, to which it is entitled, and courts will be unable to shape narrowly tailored relief." *Id.* The complaint provides no such definition. And it

cannot, because plaintiffs have not asserted a defined dress—they have asserted a market position.

The complaint claims protection over the "overall look, feel, and commercial impression" (*Compl.* ¶10) of plaintiffs' restaurants, followed by a non-exclusive list of illustrative features. But a non-exclusive list cannot define the scope of a trade-dress right. A plaintiff "must articulate the specific elements that comprise the alleged trade dress and cannot claim an amorphous overall style." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116–17 (2d Cir. 2001); see also *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995); *O Zon Inc. v. Charles*, 272 F. Supp. 2d 307, 317–18 (S.D.N.Y. 2003). Without a defined dress, this Court cannot assess distinctiveness or functionality, evaluate whether confusion is likely, or craft injunctive relief narrowly tailored to a cognizable protectable interest. Although combinations of elements may be protectable, a combination composed entirely of common or functional features is still unprotectable where it merely reflects a standard industry format. *Milstein*, 58 F.3d at 32–33; *Landscape Forms*, 113 F.3d at 381. Such an unprotectable combination is exactly what plaintiffs allege here.

The Second Circuit has cautioned that trade dress claims pitched at a high level of generality—i.e., a "style, theme, or idea"—are not protectable as a matter of law. *Yurman*, 262 F.3d at 116–18. Plaintiffs' "fast-casual taco service format" theory is precisely the type of generalized concept that *Yurman* forbids.

Because plaintiffs allege neither a defined set of visual elements nor a non-functional, source-identifying design, their trade dress claim fails at the threshold as

-17-

a matter of law. This failure alone warrants dismissal, as courts cannot assess distinctiveness, functionality, or likelihood of confusion without a defined trade dress.

**B. Plaintiffs' "Look and Feel" Theory Would Improperly Monopolize Standard Restaurant Practices.**

Even if plaintiffs had articulated a defined dress, their theory would still fail. In substance, plaintiffs seek exclusive rights over the service mechanics and generalized aesthetic ambiance of a fast-casual taco restaurant. The Lanham Act does not permit that result. Trade-dress protection must rest on specific, concrete, source-identifying elements—not a restaurant's general "look and feel" as a dining concept. That sort of "free-floating style, theme or idea" is not protectable because it would effectively foreclose competition in a restaurant category by giving one operator exclusive rights over the characteristic practices of a genre. *Landscape Forms*, 113 F.3d at 380.

Unlike the cohesive and immediately recognizable visual environment in *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 765–66 (1992)—a concrete, idiosyncratic aesthetic built around festive colors, distinctive architectural décor, and consistent motifs that consumers associated with a single source—plaintiffs allege here only a collection of commonplace service implements lacking any unified visual identity capable of signaling source. Restaurant trade dress is protectable where a plaintiff pleads a recognizable total image; it is not protectable as a claim to the general operational format of a restaurant type. *Two Pesos* involved a fully articulated and consistent visual environment—defined by specific décor, color schemes, and architectural features—not a non-exclusive list of service items. By contrast, the complaint

here identifies no unified visual composition capable of serving as a source identifier, but instead lists commonplace service implements.

## C. The Claimed Features Are Functional Methods of Service, Not Source-Identifying Design.

Even if the claimed dress were cognizable and sufficiently defined, its constituent elements are functional—not merely in the sense that each individual item has a use, but as a category: they describe the operational service mechanics of a fast-casual restaurant. Courts are especially reluctant to extend trade-dress protection to methods of service delivery, because doing so gives one competitor exclusive rights over a manner of doing business rather than a source-identifying appearance. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29–30 (2001). Plaintiffs do not seek to protect how their restaurants look; they seek to protect how they operate.

A feature is functional if it is "essential to the use or purpose" of the article or affects cost or quality. *TrafFix*, 532 U.S. at 32–33. The alleged trade dress here is not aesthetic design but a method of service delivery—how orders are taken, food is served, and tables are provisioned—which falls squarely within *TrafFix*'s prohibition on monopolizing useful features.

Grouped as the service mechanics of a fast-casual operation, each claimed element serves an operational rather than aesthetic function:

- *Paper order slips and pencils* (*Compl.* ¶49) facilitate self-directed ordering—a service-delivery mechanism, not a source-identifying visual element.

-19-

- *Tabletop sauce bottles, napkins, and silverware caddies* (*Compl.* ¶50): Placing condiments, napkins, and utensils on the table is a functional necessity in casual and fast-casual dining.

- *Rectangular metal trays* (*Compl.* ¶51): Serving tacos on metal trays is a common and functional choice for street-style and casual taco restaurants.

- *Juice presses at bar corners* (*Compl.* ¶52): Placing juice presses in visible bar areas serves a utilitarian function.

- *Single-color service aprons* (*Compl.* ¶53): Aprons serve the utilitarian purpose of protecting staff clothing.

Plaintiffs concede that "individual components of the Trade Dress may serve practical purposes when considered in isolation" (*Compl.* ¶60) but argue that their particular combination is non-functional. This argument proves too much. Taken together, these elements describe only the standard operational format of a fast-casual taco restaurant—not a distinctive visual composition. Where each claimed element independently serves an operational purpose, their aggregation serves the aggregate of those purposes, not source identification. *TrafFix*, 532 U.S. at 30; see also *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982); *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995).

## D. Plaintiffs Fail to Plead Distinctiveness or Secondary Meaning as to the Asserted Trade Dress.

Restaurant trade dress may, in principle, be inherently distinctive. *Two Pesos*, 505 U.S. at 773. But the complaint here does not plead a definite, source-identifying total image; it appends the labels "arbitrary" and "inherently distinctive" to a non-

exclusive list of standard restaurant features. Such labels do not substitute for factual allegations. *Iqbal*, 556 U.S. at 678.

Plaintiffs' fallback assertion of secondary meaning suffers from a categorical error. The complaint pleads consumer recognition of the BARTACO brand name and restaurant concept—brand goodwill—not recognition of the specific claimed combination of trays, order slips, tabletop items, aprons, and juice-press placement as identifying a single source. Recognition of BARTACO as a brand is not secondary meaning in a collection of commonplace service items. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211–13 (2000) (secondary meaning must inhere in the specific trade dress asserted, not merely the brand generally); see also *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 119–24 (2d Cir. 2001). Plaintiffs plead brand strength. They do not plead trade dress recognition.

Courts in this Circuit routinely dismiss trade dress claims at the pleading stage where the plaintiff alleges only a generalized "concept" without identifying what makes the design distinctive. *O Zon*, 272 F. Supp. 2d at 317–18. As in *O Zon*, plaintiffs invoke "distinctive" design but fail to allege what, concretely, renders their restaurant environment unique. Accordingly, their trade dress claims must be dismissed.

**Point III**

**PLAINTIFFS' CUTPA CLAIM FAILS AS A MATTER OF LAW**

Count V alleges a violation of the Connecticut Unfair Trade Practices Act ("*CUTPA*"), CONN. GEN. STAT. § 42-110a *et seq*. Plaintiffs' CUTPA claim is entirely

-21-

derivative of their federal trademark and trade dress claims. Where, as here, the underlying trademark claims fail, the CUTPA claim must fail as well.

Even evaluated independently, the conduct plaintiffs describe does not rise to the level of an unfair trade practice under CUTPA's "cigarette rule." *Conaway v. Prestia*, 191 Conn. 484, 492–93 (1983). Applied here, lawful competition using an independently descriptive name does not satisfy any of the three prongs of that rule.

Moreover, to the extent plaintiffs' CUTPA claim rests on allegations that defendants' conduct is "immoral, unethical, oppressive, and unscrupulous" (*Compl.* ¶162), these are the types of "bare assertions" that *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), instructs courts to disregard.

Courts routinely dismiss CUTPA claims that rise or fall with non-viable trademark claims.

### Point IV
### PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IS DUPLICATIVE AND SHOULD BE DISMISSED

Count VI seeks a declaratory judgment that defendants' use of TACOBARN infringes plaintiffs' rights. The Declaratory Judgment Act does not require a district court to entertain a duplicative declaratory claim where doing so would serve no useful purpose. In trademark cases, the Second Circuit recognizes that declaratory relief is justified only when it clarifies and settles the legal relations in issue or terminates the uncertainty giving rise to the proceeding. *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595–96 (2d Cir. 1996). Where a declaratory judgment claim presents no distinct controversy but merely restates the defense to the plaintiff's own affirmative claims,

the district court may exercise its discretion to dismiss it, since it can neither clarify nor settle anything beyond what the substantive counts will resolve. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995).

Here, Count VI will rise or fall with the Court's resolution of the infringement and unfair-competition counts. Because those substantive claims already present the same controversy and will fully determine the parties' rights, the declaratory-judgment claim is redundant and may be dismissed in the Court's discretion. See *Wilton v. Seven Falls Co.*, 515 U.S. at 282–89. Retaining the claim would not alter the scope of relief or issues before the Court.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss and dismiss the complaint in its entirety, with prejudice.

Dated: March 31, 2026

/s/ Hilary B. Miller
HILARY B. MILLER (ct10410)
Law Offices of Hilary B. Miller
500 West Putnam Avenue – Suite 400
Greenwich, Connecticut 06830-6096
Telephone: (203) 587-7000
Facsimile: (914) 206-3727
Email: hilary@miller.net

*Attorney for Defendants*

C:\Users\Hilary B. Miller\Documents\Documents\Shemesh, Ronnie\Tacobarn ads. Bartaco\Tacobarn Memorandum of Law in Support of MTD - Final.docx (3/31/2026 8:21:00 AM Rev. 15)

-23-