UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x

BARTECA HOLDINGS LLC and :
BARTECA INTERMEDIATE HOLDINGS LLC, :

                                      :

                      Plaintiffs, : **ORDER IMPOSING**
                                        : **SANCTIONS**

      -against- :

                                        : 26-CV-250 (VDO)

TACOBARN NEWTOWN LLC and :
TACOBARN GREENWICH LLC, :

                                        x

                       Defendants.

------------------------------------------------------------------

**VERNON D. OLIVER**, United States District Judge:

This Order addresses the Court's previously issued Order to Show Cause concerning defense counsel Hilary Miller's use of unverified generative artificial intelligence ("AI") in this matter. Having considered counsel's written response to the Order to Show Cause and his representations made at the show-cause hearing, the Court concludes that sanctions are warranted and imposes the sanctions set forth below.

## I.    <u>BACKGROUND</u>

The Court recounts the following history, as previously laid out in the Order to Show Cause issued at ECF No. 33:

On April 21, 2026, Defendants in this matter filed a Motion to Dismiss.[1] On May 20, 2026, Defendants filed a Motion to Exclude Extrinsic Evidence and to Direct Plaintiffs to File a Conforming Opposition to Defendants' Motion to Dismiss[2] (hereinafter, together with the

---

[1] *See* ECF No. 24.
[2] *See* ECF No. 28.

Motion to Dismiss, the "Motions"). Upon review of the Motions, the Court discovered

numerous case quotes that do not exist, erroneous citations, and misrepresentations of the law.

Specifically, in the Motion to Dismiss, the Court noted the following hallucinations:

| Case Law in the Motion | Notes |
| --- | --- |
| ECF No. 24-1 at 8: The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor, but is not required to credit "bare assertions," "conclusory allegations," or legal conclusions couched as factual statements. *Id.* (referring to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).) | Erroneous citation. Quotations do not exist on cited page. "Bare assertions" appears on page 681 and in the dissent. "Conclusory allegation" (singular) appears on 686. The most similar terms used on page 678 are "labels and conclusions" and "naked assertion[s]." *Iqbal*, 556 U.S. at 678, 686. |
| ECF No. 24-1 at 9–10: Incontestability bars certain validity challenges, but it does not convert a conceptually weak mark into a strong one or expand the scope of protection against nonidentical marks. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998). | Mischaracterization of the law. *Streetwise* does not address incontestability. |
| ECF No. 24-1 at 14: Despite this seemingly favorable balance, the court held that the plaintiff's complaint must be dismissed because the marks actually presented to consumers—1-800 CONTACTS on the one hand, and WARBY PARKER on the other—were "substantially different." *Id.* at 251. | Erroneous citation. Citation should be to pages 249–50. |
| ECF No. 24-1 at 20: The Second Circuit has explained why that requirement is substantive rather than technical: "Without such a precise expression of the character and scope of the claimed dress, it is impossible to evaluate the degree to which the alleged trade dress is distinctive, or the scope of protection, if any, to which it is entitled, and courts will be unable to shape narrowly tailored relief." *Landscape Forms,* | Quote does not exist. Instead, the case says:<br><br>Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of |

| | |
|---|---|
| *Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). | ingredients deserves protection.<br><br>*Landscape Forms, Inc.*, 113 F.3d at 381. |
| ECF No. 24-1 at 21: A plaintiff "must articulate the specific elements that comprise the alleged trade dress and cannot claim an amorphous overall style." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116–17 (2d Cir. 2001); see also *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995); *O Zon Inc. v. Charles*, 272 F. Supp. 2d 307, 317–18 (S.D.N.Y. 2003). | Quote does not exist. *Yurman* says that a plaintiff "must articulate the design elements that compose the trade dress" at the bottom of page 116, but nothing about amorphous overall style. *Yurman Design, Inc.*, 262 F.3d 101 at 116.<br><br>As to *O Zon*, erroneous citation. *O Zon* ends on page 314. |
| ECF No. 24-1 at 25: Courts in this Circuit routinely dismiss trade dress claims at the pleading stage where the plaintiff alleges only a generalized "concept" without identifying what makes the design distinctive. *O Zon*, 272 F. Supp. 2d at 317–18. | Erroneous citation. *O Zon* ends on page 314. |
| ECF No. 24-1 at 26: In trademark cases, the Second Circuit recognizes that declaratory relief is justified only when it clarifies and settles the legal relations in issue or terminates the uncertainty giving rise to the proceeding. *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595–96 (2d Cir. 1996). | Mischaracterization of the law and erroneous citation. Declaratory judgment is required when these two conditions are met; this is not the *only* time declaratory relief is possible. Additionally, the proposition appears on page 597. |
| ECF No. 24-1 at 26–27: Where a declaratory judgment claim presents no distinct controversy but merely restates the defense to the plaintiff's own affirmative claims, the district court may exercise its discretion to dismiss it, since it can neither clarify nor settle anything beyond what the substantive counts will resolve. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995). | Misrepresentation of the law. This case does not stand for the asserted proposition. |
| ECF No. 24-1 at 27: Here, Count VI will rise or fall with the Court's resolution of the | Misrepresentation of the law. This case does not stand for the asserted proposition. |

3

| infringement and unfair-competition counts. Because those substantive claims already present the same controversy and will fully determine the parties' rights, the declaratory-judgment claim is redundant and may be dismissed in the Court's discretion. *See Wilton v. Seven Falls Co.*, 515 U.S. at 282–89. | |

With respect to the Motion to Exclude Extrinsic Evidence, the Court noted the following hallucinations:

| Case Law in the Motion | Notes |
| --- | --- |
| ECF No. 28 at 2: The governing rule is settled. On a motion to dismiss under Rule 12(b)(6), the Court's review is limited to "the complaint, any written instrument attached to it as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). | Quote does not exist. Instead, the case says:<br><br>For purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991)); *see* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Int'l Audiotext,* 62 F.3d at 72.<br><br>*Chambers.*, 282 F.3d at 152–53. |
| ECF No. 28 at 2: A court may also take judicial notice of adjudicative facts under *Fed. R. Evid.* 201(b). *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). | Mischaracterization of the law. Case does not stand for this proposition. Nothing about FRE 201(b) appears in *Chambers*. |
| ECF No. 28 at 2–3: The Second Circuit has recently reaffirmed the strictness of that | Erroneous citation. *Pearson* does not contain pages 410–12. |

| | |
|---|---|
| boundary. In *Pearson v. Gesner*, 125 F.4th 400 (2d Cir. 2025), the court held it was error to consider a defendant-created misbehavior report and video on a Rule 12(b)(6) motion where the pro se plaintiff did not rely on those materials in drafting the pleading, even though the materials were in the record and were argued to be "integral." *Id.* at 409–12. | |
| ECF No. 28 at 3: In *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000), the Second Circuit held that "[w]hen presented with a 12(b)(6) motion, the district court may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment." | Quote does not exist. Instead, the case says:<br><br>[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir. 1988).<br><br>*Friedl*, 210 F.3d at 83. |
| ECF No. 28 at 3: And a district court errs when it "relies on factual allegations contained in legal briefs or memoranda" to decide a Rule 12(b)(6) motion. *Fonte v. Bd. Of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988). | Quote does not exist. Instead, the case says:<br><br>Factual allegations contained in legal briefs or memoranda are also treated as matters outside the pleading for purposes of Rule 12(b).<br><br>*Fonte*, 848 F.2d at 25. |
| ECF No. 28 at 3: See also *Kopec v. Coughlin*, 922 F.2d 152, 155–56 (2d Cir. 1991) (Rule 12 requires exclusion or conversion when affidavits/exhibits are considered) | Erroneous citation. Relevant discussion appears on pages 154–55. |
| ECF No. 28 at 3: *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991) (documents may be considered at | Mischaracterization of the law. Case does not stand for the proposition that documents at Rule 12 may "*only*" be considered if |

| | |
|---|---|
| Rule 12 only when plaintiffs had notice of them and relied on them in bringing suit). | plaintiff had notice of them and relies on them in bringing suit.<br><br>Instead, it says that in the context of security fraud cases, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure" and "when a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC, particularly where plaintiff has been put on notice by defendant's proffer of these public documents. *Cortec Indus.*, 949 F.2d at 47.<br><br>The case then goes on to say that a "finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since, as noted earlier, the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* at 48.<br><br>In any case, it is unclear how *Cortec* applies to the instant case, where it is Plaintiffs, not |

| | Defendants, who seek to introduce extrinsic evidence. |
|---|---|

On June 12, 2026, having discovered the above hallucinations, the Court issued the underlying Order to Show Cause.[3] On June 18, 2026, Attorney Miller filed his response to the Order to Show Cause, in which he "accept[ed] full and unqualified responsibility for the defects the Court identified."[4] Attorney Miller represented that the errors were unintentional and resulted from an inadequate verification process that confirmed only the existence of the cited cases, rather than the accuracy of the quotations, pin cites, parentheticals, and legal propositions attributed to those authorities.[5] He further stated that he had undertaken a line-by-line review of the challenged filings, requested leave to file a corrected memorandum in support of the Motion to Dismiss and to withdraw the Motion to Exclude Extrinsic Evidence, offered to reimburse Plaintiffs for any reasonable incremental attorneys' fees and expenses resulting from the corrected briefing, and described changes to his verification practices designed to prevent similar errors in the future.[6]

On June 25, 2026, the Court held a show-cause hearing, at which Attorney Miller reiterated those representations and further explained the circumstances under which the AI-generated material was incorporated into his briefing.[7] Attorney Miller clarified that this matter is the first and only matter in which he utilized artificial intelligence. As for his writing process, Attorney Miller explained that he first wrote the brief himself conventionally. Then, in an

---

[3] ECF No. 33.

[4] ECF No. 36 ¶ 2.

[5] *Id.* ¶¶ 3–5.

[6] *Id.* ¶¶ 6, 8–12.

[7] ECF No. 37.

attempt to improve it, he used a tool called Open Law, which he paid for, for suggestions on arguments and additional cases. He also used Claude and Chat GPT for additional suggestions. Concerned about the risk of AI hallucinations, Attorney Miller then cross-checked the citations in the brief to determine whether they existed and were cited correctly, including by Shepardizing every case in the brief through Lexis. However, he did not adequately verify that each "pin cite" referred to the correct page or that the quotations included in his brief were accurate.

## II.     **LEGAL STANDARD**

Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") dictates that "[e]very pleading, written motion, and other paper must be signed by . . . a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Rule 11(b) states, in relevant part, that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…

Fed. R. Civ. P. 11(b). Rule 11 "is not aspirational; it is the minimal standard of honesty that keeps the adversarial process tethered to reality." *Mattox v. Prod. Innovations Rsch., LLC*, 807 F. Supp. 3d 1341, 1347–48 (E.D. Okla. 2025). In short, Rule 11(b) imposes an affirmative duty on parties and counsel to ensure that all papers filed with the Court are factually and legally well-founded. "Under Rule 11, a court may sanction an attorney for, among other

8

things, misrepresenting facts or making frivolous legal arguments." *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam).

"Merely incorrect legal statements are not sanctionable under Rule 11(b)(2)." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 391 (2d Cir. 2003). "The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011). A legal contention is frivolous because it has "no chance of success" and there "is no reasonable argument to extend, modify or reverse the law as it stands." *Id.* (quoting *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)). The filing of papers "without taking the necessary care in their preparation" is an "abuse of the judicial system" that is subject to Rule 11 sanction. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990). Rule 11 creates an "incentive to stop, think and investigate more carefully before serving and filing papers." *Id.* (cleaned up).

Rule 11 obligations take on particular significance in the context of filings prepared with the assistance of generative AI. "Federal courts increasingly confront filings prepared with the assistance of generative artificial intelligence. While such tools can enhance efficiency, they also create a new professional hazard, synthetic authority presented as precedent." *Mattox*, 807 F. Supp. 3d at 1347. The main problem with filings that rely on generative AI of course, is that they often include hallucinations. The Court has defined a "hallucination" in the context of AI-assisted legal research as one of three errors:

> (1) fabricated cases (whether a nonexistent case name and citation, an existing case name with an invented or erroneous citation, or a real citation that leads to a wholly unrelated decision); (2) fabricated quotations from actual cases; and (3) misstatements of law (representations of legal rules, standards, or holdings that are inaccurate, incomplete, or unsupported by any real authority, including AI-generated summaries that distort or materially alter what a case actually decided).

*See Andre v. Warden, FCI Danbury*, 827 F. Supp. 3d 294, 305 (D. Conn. 2025).

"In an adversarial system that depends on litigants to candidly present accurate authority, such hallucinations mislead the Court, forcing it either to expend substantial resources verifying fabricated material or, worse, risk reliance on an erroneous statement of the law." *Id.* Numerous additional concerns abound:

> "Many harms flow from the submission of fake opinions . . . The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity."

*Id.* at 305–06 (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023)).

The Court previously adopted, in part, the analytical framework set forth by the *Mattox* court while confronting a pro se party who used artificial intelligence in drafting its pleadings.[8] *Id.* at 306. Under that framework, once "a pleading containing fabricated citations or nonexistent law has been identified and a hearing held," the court considers two principal factors in determining whether sanctions are warranted. *Id.* Specifically, the Court considers:

> 1. Verification and Inquiry — Whether counsel [or the unrepresented party] conducted a reasonable, human-based verification of every cited authority before filing. A reasonable inquiry requires more than reliance on an automated tool; it demands independent confirmation through recognized primary legal

---

[8] The full *Mattox* test includes an additional factor titled "Accountability and Supervision." 807 F. Supp. 3d at 1348. The *Mattox* court explained the factor as: "Whether supervising or associated attorneys exercised oversight consistent with [ABA] Model Rules [of Professional Conduct] 5.1 and 5.3 and whether firm-level safeguards existed to prevent recurrence. The inquiry extends beyond the drafter to the institutional culture that permitted unverified authority to reach the docket. A firm's silence or absence of policy does not immunize it; it implicates it." *Id.* The Court originally omitted this factor in *Andre* as it found it to be inapplicable to *pro se* litigants. It omits the factor as inapplicable here, too, because Attorney Miller is a sole practitioner.

sources. The signature of an attorney [or the unrepresented party] certifies human diligence, not mechanical output.

2. Candor and Correction — Whether counsel [or the unrepresented party] promptly disclosed the use of AI and corrected the record once inaccuracies were discovered. Candor after filing weighs heavily in mitigation; concealment or minimization aggravates the violation. The duty of candor extends beyond the moment of signature, it continues for as long as the filing remains before the Court.

*Id.* (quoting *Mattox*, 807 F. Supp. 3d at 1348).

A court may "initiate sanctions *sua sponte* by issuing an order 'to show cause why conduct specifically described in the order has not violated Rule 11(b)." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543 (2d Cir. 2023) (quoting Fed. R. Civ. P. 11(c)(3)). The power to *sua sponte* impose Rule 11 sanctions is akin to a courts inherent power of contempt, and like contempt, a district court may *sua sponte* sanction a litigant only upon finding they acted with "subjective bad faith." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 87, 90 (2d. Cir. 2003). Subjective bad faith is a "heightened *mens rea* standard" designed to promote zealous advocacy while deterring improper submissions. *Id*. at 91. The heightened standard can be satisfied upon finding that a litigant made a "misleading representation to a district court for an improper purpose." *Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 387 (W.D.N.Y. 2013), *aff'd sub nom,* 569 F. App'x 25 (2d Cir. 2014). "Courts in this circuit have repeatedly found that presenting AI-generated hallucinations as valid caselaw constitutes subjective bad faith." *Andre*, 827 F. Supp. 3d at 306 (collecting cases).

## III.   DISCUSSION

### A.   Violation of Rule 11

Applying the framework discussed above, the Court finds that the first factor—verification and inquiry—weighs in favor of sanctions because Attorney Miller failed to

11

conduct a reasonable human verification of the authorities cited in the challenged filings before submitting them. As he admitted in his response to the Court's Order to Show Cause to Attorney Miller did not "check[] the precise text of each quotation, the accuracy of each pin cite, or the fidelity of each explanatory parenthetical and statement of law to its source."[9] But "Rule 11 imposes an obligation on attorneys to, at a minimum, read the cases they cite to the Court." *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 348 (E.D.N.Y. 2025) (citing *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024)). Had Attorney Miller undertaken the routine task of cite checking his brief, he would have discovered the errors the Court later identified. He thus failed to undertake the "reasonable inquiry" required by Rule 11.

The second factor, however,—candor and correction—weighs in favor of mitigation. Attorney Miller promptly accepted responsibility, apologized to the Court, and undertook meaningful remedial measures, including offering to correct the record, reimburse plaintiffs for reasonable incremental attorneys' fees, and implement enhanced verification procedures to prevent similar errors in the future.

Nevertheless, Attorney Miller's candor does not preclude a finding of subjective bad faith in this matter—a finding that is necessary for a court's imposition of sanctions *sua sponte*. The Court appreciates that he did not obfuscate or attempt to skirt responsibility for his conduct, but rather immediately accepted responsibility and proposed remedial measures. "But regret and apologies are not necessarily enough to avoid the imposition of sanctions for the submission of non-existent legal authority." *Id.* at 350. As discussed, "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or

---

[9] ECF No. 36 ¶ 4.

later advocating it—an attorney" makes certain certifications "to the best of the person's knowledge, information, and belief," including that "the claims, defenses, and other legal contentions [included in the submission] are warranted by existing law." Fed. R. Civ. P. 11(b). Here, Attorney Miller's failure to review the cited authorities before filing the Motions establishes that, at the time he made the Rule 11 certifications, he lacked the knowledge necessary to truthfully represent that the legal contentions contained therein were warranted by existing law. His certifications therefore conveyed a level of knowledge and verification that he did not possess. "A false statement of knowledge can constitute subjective bad faith where the speaker knew that he had no such knowledge." *Mata*, 678 F. Supp. 3d at 462–63 (cleaned up). Accordingly, the Court finds that Attorney Miller acted with subjective bad faith in submitting filings containing legal authorities that he had not reviewed or verified.

Separately, the Court notes that Attorney Miller's conduct has come at a cost to Defendants. "Clients hire attorneys to perform legal research, investigate the merit of their claims, and provide the best argument in support of their case to the Court. The Court cannot permit attorneys to delegate these fundamental tenants of the attorney-client relationship to an AI platform and submit the product to the Court without review." *Benjamin*, 779 F. Supp. 3d at 349. Lawyers in the State of Connecticut carry a duty to "provide competent representation to a client," Conn. R. of Professional Conduct 1.1. "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *Id.* By utilizing AI for a task that he should have undertaken on his own, Attorney Miller did not live up to this duty and violated the Connecticut Rules of Professional Conduct, the authority of which this Court has recognized. *See* D. Conn. L. Civ. R. 83.2(a).

Additionally, Attorney Miller's use of unverified AI has unnecessarily consumed the Court's limited resources. Before discovering the deficiencies in counsel's filings, the Court had undertaken a thorough review of Defendants' Motion to Exclude Extrinsic Evidence and was in the process of drafting an order resolving that motion. In the course of reviewing the briefing in preparation for drafting its opinion—which relied, in part, on authorities cited by defense counsel—the Court identified indications that certain citations had been generated by unverified AI. This discovery caused the Court to question the reliability of Defendant' other pending filings, including the Motion to Dismiss. Upon further review, the Court identified additional inaccuracies in that motion as well. As a result, the Court was required to suspend its work on the merits of the pending motions and instead expend additional judicial resources investigating the issue, preparing an Order to Show Cause, conducting a hearing, and drafting the present Order. These unnecessary proceedings would have been avoided had counsel fulfilled his obligation to verify the accuracy and authenticity of the authorities presented to the Court.

The circumstances of this case are particularly troubling because Attorney Miller had explicit notice of the risks associated with submitting unverified AI-generated material to the Court. The District of Connecticut has adopted a Standing Order that is posted on the docket of all cases that warns litigants of their obligation to independently verify any AI-generated content before filing it with the Court.[10] The undersigned has likewise provided additional

---

[10] *See* ECF No. 6, Notice to Counsel and Litigants Regarding AI-Assisted Research, which states:

> Attorneys and *pro se* litigants alike should exercise <u>great</u> caution in submitting any AI-generated language in filings before the Court. Use of AI without verification of the accuracy of the information it generates like any other shoddy research

guidance emphasizing that counsel remain responsible for the accuracy of all representations made to the Court, regardless of whether artificial intelligence tools are used in their preparation.[11] Thus, this was not a case in which counsel encountered an issue arising in an unsettled area without guidance; rather, Attorney Miller failed to comply with obligations that had been expressly brought to the attention of litigants appearing before this Court. This heightened notice makes his failure to verify the authorities submitted in his filings all the more significant.

### B.    Imposition of Sanctions

"A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). A court has available a variety of possible sanctions to impose for Rule 11 violations, including, but not limited to, "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting

---

method from other sources or tools implicates Federal Rule of Civil Procedure 11, the central purpose of which is to deter baseless filings in district court and thus to streamline the administration and procedure of the federal courts. Rule 11 applies fully to actions filed by *pro se* litigants.

Therefore, all parties are on notice that the Court has a no-tolerance policy for any briefing (AI-assisted or not) that hallucinates legal propositions or otherwise severely misstates the law. Such filings will often result in sanctions absent reasonable excuse. *See generally Willis v. U.S. Bank Nat'l Ass'n et al*, No. 3:25-CV-516-BN, 2025 WL 1408897 (N.D. Tex. May 15, 2025).

[11]    *See* Pretrial Preferences of Judge Vernon D. Oliver, available at https://www.ctd.uscourts.gov/content/vernon-d-oliver (warning litigants that "AI . . . presents risks: Namely, 'hallucinated' cases or otherwise patently incorrect statements of law).

from the violation." *Id.* A court could also "strik[e] the offending paper" and "issu[e] an admonition." Fed. R. Civ. P. 11, advisory committee's note to 1993 Amendments. Relatedly, pursuant to the Local Rules of the District of Connecticut, "[w]hen any misconduct or allegation of misconduct which would warrant discipline of any attorney admitted to practice before this Court comes to the attention of any Judge of this Court, the Judge may refer the matter to the Grievance Committee for the initiation of a presentment or the formulation of such other recommendation as may be appropriate." D. Conn. L. Civ. R. 83(d)(4).

Courts across the country have issued a variety of sanctions against attorneys who engaged in the use of unverified AI. Monetary sanctions, in most cases, have ranged from $1,500 to $15,000. *See, e.g., Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 24-CV-326, 2025 WL 574234, at *2–3 (S.D. Ind. Feb. 21, 2025), *R&R adopted as modified*, 2025 WL 1511211 (S.D. Ind. May 28, 2025) (recommending $15,000 fine for filing a brief with a non-existent citation); *Mata*, 678 F. Supp. 3d at 466 ($5,000 fine for citing fake cases and then submitting AI-generated fake excerpts from the fake cases); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 499 (D. Wyo. 2025) ($3,000 fine for the drafter of the brief with fake cases and $1,000 for other attorneys who signed, but did not draft brief); *McCormick v. Texakoma Financial Inc.*, 25-CV-773, 2026 WL 1746259, at *9 (E.D. Tex. June 11, 2026) ($5,000 fine where attorney's filing contained fake cases); *Landberg v. City of New York*, No. 2025-02380, 2026 WL 1792016, at *7 (N.Y. App. Div. June 23, 2026) (imposing $8,000 sanction for attorney who cited fake cases and initially denied use of AI, and $2,500 for his law firm).

Numerous courts have admonished or reprimanded offending attorneys. *See, e.g., McCormick*, 2026 WL 1746259, at *9. Other courts have referred matters to the chief judge

16

for further disciplinary proceedings, *see, e.g., Mid Cent.*, 2025 WL 574234, at *5, or referred attorneys to applicable state disciplinary authorities for review. *See, e.g., Mezu v. Mezu*, 267 Md. App. 354, 374 (2025). In addition to monetary sanctions (which are imposed in the vast majority of cases), admonitions, and referrals, courts have imposed more targeted sanctions given the circumstances by, for example, revoking the *pro hac vice* admission of an attorney, *Wadsworth*, 348 F.R.D. at 497–98, or requiring the attorney attend CLE trainings regarding the use of AI. *Gauthier v. Goodyear Tire & Rubber Co.*, No. 23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024). In one case, the U.S. District Court for the Western District of North Carolina ordered an offending attorney to write a law review article about the dangers and pitfalls of AI based on his own offending conduct. *Doe v. Univ. of N.C. Sys.*, No. 23-CV-41, ECF No. 227 (E.D.N.C. June 16, 2026).

In imposing sanctions, the Court has considered the particular circumstances of this case and recognizes that the cases discussed above involve a range of conduct warranting different forms and levels of sanctions. On the one hand, the Court acknowledges that Attorney Miller's misconduct, while serious, differs in certain respects from the conduct addressed in many of those cases. For example, although Attorney Miller relied on hallucinated quotations, erroneous citations, and unsupported legal propositions, he did not submit entirely fabricated cases or authorities that did not exist, as occurred in many of the cases discussed above. Additionally, unlike some attorneys sanctioned in other matters, Attorney Miller did not attempt to evade responsibility after the Court raised concerns regarding his filings. Instead, he promptly acknowledged his errors, accepted responsibility, and proposed remedial measures.

On the other hand, Attorney Miller's conduct nonetheless warrants a meaningful sanction. He violated Rule 11 by submitting filings containing legal authorities that he had not verified, failed to satisfy his professional obligation to provide competent representation to his clients, and caused the unnecessary expenditure of judicial resources. These concerns are further heightened by the fact that Attorney Miller had received advance notice regarding the risks associated with the use of artificial intelligence in legal filings. The Court's Standing Order Regarding the Use of Artificial Intelligence and the undersigned's express warning for attorneys to exercise caution and independent judgment when utilizing AI tools provided clear guidance that AI-generated material must be carefully reviewed and verified before submission.

Balancing these considerations, the Court concludes that a monetary sanction of $3,500, together with a referral of this matter to the Grievance Committee pursuant to Local Rule 83(c)(2), is appropriate. This sanction is sufficient to underscore the seriousness of Attorney Miller's conduct, deter similar conduct in the future, and reinforce counsel's obligation to independently verify all authorities submitted to the Court.

Additionally, based on Attorney Miller's representation that he will withdraw the pending Motion to Exclude Extrinsic Evidence, the Court construes that representation as a motion for withdrawal and hereby grants it. The Motion to Exclude Extrinsic Evidence at ECF No. 28 is therefore **withdrawn**. Further, because the sanctions imposed herein arise from counsel's conduct rather than any action by Defendants, and to avoid prejudicing Defendants, the Court **terminates** the Motion to Dismiss at ECF No. 24 and **grants** Defendants leave to file a corrected Motion to Dismiss.

18

Lastly, despite Attorney Miller's representation that he is "prepared, personally, to reimburse plaintiffs for reasonable attorneys' fees and expenses caused by the need to respond again to corrected briefing,"[12] the Court declines to order him to do so. As noted above, Rule 11 permits a court to impose "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). However, such a sanction may be imposed only upon motion. *See id.* Because the sanctions imposed herein arise from the Court's *sua sponte* issuance of an Order to Show Cause, rather than a motion brought by Plaintiffs, the Court will not direct Attorney Miller to reimburse Plaintiffs for their attorneys' fees or expenses. Indeed, the substantial resources expended in this matter were largely incurred by the Court itself, which identified the AI-related deficiencies, prepared the Order to Show Cause, conducted the resulting hearing, and drafted this Order without the benefit of adversarial briefing.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court concludes that Attorney Miller's submission of unverified AI-generated legal authorities warrants sanctions under Rule 11 and, accordingly, imposes a $3,500 monetary sanction and refers this matter to the Grievance Committee pursuant to Local Rule 83(c)(2). Attorney Miller should deposit the monetary sanction with the Clerk of Court on or before **August 14, 2026.**

Additionally, the Motion to Exclude Extrinsic Evidence at ECF No. 28 is **withdrawn**, and the Motion to Dismiss at ECF No. 24 is **terminated**. The Court **grants** Defendants leave to file a corrected Motion to Dismiss on or before **August 14, 2026**. Plaintiffs may file a

---

[12] ECF No. 36 ¶ 11.

response on or before **September 4, 2026**, and Defendants may file a reply on or before **September 18, 2026**. Each case, statute, or other legal authority cited by Defendants in any future filing—including the anticipated corrected Motion to Dismiss and the reply thereto—shall include a hyperlink to the corresponding Westlaw or Lexis entry for that authority.

"The Court will not tolerate pleadings riddled with hallucinated citations masquerading as legitimate legal authority." *Hanson v. Nest Home Lending, LLC*, No. 25-CV-2599, 2025 WL 2959293, at *3 (D. Colo. Oct. 17, 2025). "This conduct undermines the integrity of the judicial process and disrespects and wastes the Court's and parties' time and resources." *Id.* The Court emphasizes that the use of artificial intelligence does not diminish counsel's fundamental obligations to exercise independent professional judgment, verify legal authorities, and ensure that every representation made to the Court is accurate, and trusts that the sanctions imposed herein will serve to deter similar conduct by counsel appearing before this Court.

**SO ORDERED.**

Hartford, Connecticut
August 4, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

20